**MAR–LEN OF LOUISIANA, INC.,**
Plaintiff-Appellee,

v.

**PARSONS–GILBANE, a Joint Venture,**
Defendant-Appellant.

No. 85–4125
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 11, 1985.

McGlinchey, Stafford, Mintz & Cellini, Henri Wolbrette, III, Kathleen A. Manning, New Orleans, La., for defendant-appellant.

Allen R. Boudreaux, Thibodaux, La., for plaintiff-appellee.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

Parsons-Gilbane appeals from an order of the district court staying pending arbitration proceedings. On appeal, Parsons-Gilbane asserts that the district court erroneously concluded that a dispute with Mar-Len of Louisiana, Inc. (Mar-Len) regarding the validity of certain contract modifications is beyond the scope of an arbitration agreement between the parties. This Court finds that the dispute is subject to the party's arbitration agreement. The order of the district court is vacated and remanded.

## I. BACKGROUND

Acting as construction manager of the Department of Energy's Strategic Petroleum Reserve Project, Parsons-Gilbane contracted with Mar-Len of Louisiana, Inc. on April 28, 1981, to construct and install a fire and flushwater system at West Hackberry, Louisiana. The original contract between Parsons-Gilbane and Mar-Len provided that Mar-Len would complete construction and testing of the system by December 18, 1981, and would be paid $4,387,-500.

Eventually, the parties added thirty-nine modifications to the basic contract. These modifications increased the contract price to $5,607,205.30 and extended the completion date for the contract work to January 29, 1982. Two of these modifications are central to the current dispute. In Modification 22, Parsons-Gilbane granted Mar-Len a waiver of a backfill specification that Mar-Len considered expensive and time consuming. The contract originally required that pipeline hydrostatic testing be done before backfilling was accomplished. Modification 22 granted Mar-Len a performance time extension and a change to allow post-backfill testing. In return, Mar-Len agreed to waive certain delay claims.

On September 3, 1982, after Mar-Len's activities at the worksite had ceased, Mar-Len delivered to Parsons-Gilbane a seven-volume claim package alleging various deficiencies and inefficiencies and requiring that Mar-Len receive an additional $6,153,-629.25 for performance of the contract work. Attempts to resolve this dispute concerning the amount of compensation due Mar-Len for its performance began shortly after the claim package was reviewed by Parsons-Gilbane and government auditors, but only a partial compromise was reached. This compromise became Modification 39. Modification 39 granted Mar-Len an additional $300,000 in compensation for work done at the site which Mar-Len claimed was beyond the scope of its contractual responsibilities. Mar-Len later repudiated Modifications 22 and 39 alleging that they were obtained without its consent due to the exertion of economic duress by Parsons-Gilbane.

The Parsons-Gilbane/Mar-Len contract contains the following language governing the resolution of disputes between the parties:

> "ARTICLE XIV—*Disputes* (July 1979)
>
> 1.0 Any dispute arising under this subcontract that is not settled by agreement of the parties, or pursuant to the administrative relief provided for in the following paragraphs of this Article, shall be settled by arbitration as provided in Clause 5.0 of this Article.
>
> . . . . .
>
> 5.0 In the event of any dispute not settled by agreement of the parties, or pursuant to the administrative relief provided for in the preceding Paragraphs 1.0, 2.0, or 3.0 of this Article, between Contractor and Subcontractor *with respect to the interpretation or performance of this Subcontract*, the same shall be settled by arbitration by the American Arbitration Association ("Association") before a single arbitrator in accordance with the Association's Construction Industry Arbitration Rules, at New Orleans, Louisiana." (emphasis added).

Because Mar-Len had repudiated the two modifications, Parsons-Gilbane initiated arbitration on January 17, 1983, before the American Arbitration Association. In the

arbitration proceeding, Parsons-Gilbane sought a declaration that Modification 22 waived certain delay claims contained in the seven-volume claim package and that Modification 39 settled amounts Mar-Len claimed for extra work. Arbitration proceedings were stayed to. allow the parties time to explore settlement negotiations. The stay ended on July 18, 1983, after attempts at amicable resolution had failed.

Mar-Len then filed suit on August 5, 1983, in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, seeking reformation or voidance of Modifications 22 and 39 of its contract with Parsons-Gilbane based on lack of consent (economic duress) in contracting for these two provisions. On August 16, 1983, Parsons-Gilbane removed the action to the United States District Court, Western District of Louisiana. Parsons-Gilbane then filed a motion to compel arbitration and to stay the proceedings. On November 30, 1983, the federal district court denied the motion to stay and to compel arbitration and ordered the trial of Mar-Len's action. The district court concluded that the Parsons-Gilbane/Mar-Len arbitration agreement was "not susceptible of an interpretation that covers the asserted dispute." The district court held that the arbitration agreement covered only disputes involving the interpretation and performance of the contract but not challenges to the validity of subsequent contract modifications.

Parsons-Gilbane appealed the district court's determination to this Court. In *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 732 F.2d 444 (5th Cir.1984), a divided panel of this Court dismissed the appeal. This Court concluded that the district court's denial of Parsons-Gilbane's motion to stay and to compel arbitration was not an appealable interlocutory order under 28 U.S.C. § 1292(a)(1).

 Subsequent to this Court's order dismissing Parsons-Gilbane's appeal, Mar-Len filed a motion requesting the district court to issue an injunction prohibiting any further proceedings in the pending arbitration. On December 12, 1984, the district court issued the requested injunction based on that court's earlier conclusion that the dispute between Mar-Len and Parsons-Gilbane is not within the scope of their arbitration agreement. On January 2, 1985, Parsons-Gilbane properly perfected this appeal from the district court's order granting the injunction.[1] On appeal, Parsons-Gilbane argues that the district court improperly stayed the arbitration because of the district court's erroneous conclusion that the Mar-Len/Parsons-Gilbane dispute was not arbitrable.

## II. ARBITRABILITY

 The question of arbitrability is determined on the basis of the existence of an arbitration clause that on its face appears broad enough to encompass the parties' claims. *Commerce Park at DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334, 338 (5th Cir.1984). A presumption of arbitrability exists requiring that whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. *United Steelworkers of America v. Warrior & Gulf Navigational Co.*, 363 U.S. 574, 583,

---

1. An order staying arbitration pending disposition of litigation before the court is an appealable interlocutory order granting an injunction under 28 U.S.C. § 1292(a)(1). *City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 527 (5th Cir.1983); *Texaco, Inc. v. American Trading Transportation Co.*, 644 F.2d 1152, 1153–54 (5th Cir.1981); *Firestone Tire & Rubber Co. v. International Union*, Etc., 476 F.2d 603, 604 (5th Cir.1973).

The district court's order staying arbitration is distinguishable from its earlier nonappealable order refusing to stay its own hand in deference to the arbitration proceedings. Arbitration is not a mere extension of a court's proceedings but involves a separate tribunal. The instant order was not an exercise by the district court of its inherent power to control its own proceedings. In the instant case, the district court was asked to interfere with proceedings in another forum. The district court exercised its equity powers to halt action of its litigants outside of its own proceedings—the classic form of an injunction. *A & E Plastik Pak Co. v. Monsanto Co.*, 396 F.2d 710, 713 (9th Cir.1968).

80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). The weight of this presumption is heavy: arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue." *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 168 (5th Cir.1979).

The presumption favoring arbitrability is based in large part on policy considerations. A primary consideration recognized by the courts has been the desirability of relative speed and economy of arbitration "not subject to delay and obstruction in the courts." *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). A second consideration which has influenced courts to embrace the resolution of disputes by arbitration is the desirability of "eas[ing] the congestion of the Court dockets." *Southwest Industrial Import and Export, Inc. v. Wilmod Co., Inc.,* 524 F.2d 468, 470 (5th Cir.1975). Furtherance of these objectives requires broad construction of arbitration agreements.

■ Given the heavy presumption of arbitrability, this Court concludes that the arbitration clause in the Parsons-Gilbane/Mar-Len contract is sufficiently broad to cover Mar-Len's challenge to the disputed contract modifications. The broad arbitration clause in question covers any dispute "with respect to the interpretation or performance" of the Parsons-Gilbane/Mar-Len contract. In interpreting a similar arbitration clause, the Seventh Circuit stated that:

> [w]here there is a broad arbitration clause covering all disputes involving the 'interpretation, application, or implementation' of a contract, '[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'

*National Railroad Passenger · Corp. v. Chesapeake & Ohio Railroad Co.,* 551 F.2d 136, 140 (7th Cir.1977), *quoting United Steelworkers of America v. Warrior &* *Gulf Navigational Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960).

■ Mar-Len describes its challenge to Modifications 22 and 39 as a claim that the agreement was procured by economic duress. The arbitration clause in dispute in the instant case lacks any express provisions excluding claims such as that asserted by Mar-Len. Moreover, Mar-Len has failed to produce evidence of a purpose to exclude its claim from arbitration. To the contrary, questions of interpretation or performance of the Parsons-Gilbane/Mar-Len contract are central to Mar-Len's claim that the modifications were obtained through economic duress. The economic duress alleged by Mar-Len arose out of a dispute regarding performance of the original contract. This dispute led to Modifications 22 and 39. To allow Mar-Len's conclusory allegations that the modifications are invalid to defeat arbitrability of a dispute clearly within the scope of the arbitration clause would be contrary to the presumption of arbitrability.

■ Several courts have permitted arbitration of disputes regarding alleged fraud in the inducement of a contract under arbitration clauses similar to the Parsons-Gilbane/Mar-Len clause. In *Schacht v. Beacon Insurance Co.,* 742 F.2d 386, 389 (7th Cir.1984), for example, the court referred the appellant's fraudulent inducement defense to an arbitrator under an arbitration clause covering differences of opinion "with respect to the interpretation of [the] Agreement or the performance" of the contract obligations. Similarly, in *Hannah Furniture Co. v. Workbench, Inc.,* 561 F.Supp. 1243 (W.D.Pa.1983), the court held that an allegation of fraud in the inducement of a franchise relationship was within the scope of an arbitration clause covering "disputes or grievances between the parties involving questions of interpretation" of any of the contract's provisions. The Court in *Hannah Furniture* could not "escape the conclusion that all of plaintiff's claims involve the contractual relations between the parties and defendant's perform-

ance of that contract, requiring interpretation of the contract, and are therefore subject to arbitration." *Id.* at 1245. This Court is also compelled to conclude that Mar-Len's claim involves the contractual relations between Parsons-Gilbane and Mar-Len and is therefore subject to arbitration.

The district court, in the instant case, relied in large part on *In re Kinoshita,* 287 F.2d 951 (2d Cir.1961), in concluding that Mar-Len's claim was beyond the scope of the parties' arbitration agreement. The court in *Kinoshita* had concluded that a clause requiring arbitration of "any dispute or difference ... aris[ing] under" the agreement was not sufficiently broad to encompass a claim of fraudulent inducement. *Id.* at 952–53. Recently, however, the Second Circuit itself observed that *Kinoshita* is inconsistent with federal policy favoring arbitration. *S.A. Mineracao Da Trindade-Samitri v. Utah International, Inc.,* 745 F.2d 190, 194 (2d Cir.1984). Although declining to overrule *Kinoshita,* the Second Circuit "confine[d] *Kinoshita* to its precise facts." *Id.* Because the arbitration clause in the instant case differs from that in *Kinoshita* and recognizing that *Kinoshita* is inconsistent with federal policy favoring arbitration, this Court concludes that the district court erred in applying *Kinoshita* to grant Mar-Len's request to stay arbitration.

Accordingly, the order of the district court is

VACATED AND REMANDED.