**EXPLO, INC., et al.,**
**Plaintiffs-Appellees,**

v.

**SOUTHERN NATURAL GAS CO.,**
**Defendant-Appellant.**

**No. 85–4879**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

May 2, 1986.

Brunini, Grantham, Grower & Hewes, Walter S. Weems, W. Rodney Clement, Jr., Jackson, Miss., for defendant-appellant.

Harper, Bellan, McWhorter & Williams, Charles Ed Harper, Gerald William McWhorter, Jackson, Miss., for plaintiffs-appellees.

Before GEE, REAVLEY and ROBERT M. HILL, Circuit Judges.

ROBERT M. HILL, Circuit Judge:

Defendant-appellant Southern Natural Gas Company (Southern) appeals the district court's interlocutory order approving the magistrate's order which denied Southern's application to stay the action and send to arbitration issues raised in a complaint filed by plaintiff-appellee Explo, Inc. and its individual shareholders (collectively Explo). Southern contends that the magis-

---

trate improperly interpreted the scope of the arbitration clause in a contract between the parties and that the district court erroneously approved the magistrate's ruling. Finding ourselves in agreement with Southern, we reverse the district court's order and remand with instructions.

## I.

On April 1, 1980, Explo, a producer of natural gas, entered in a gas sales contract with Southern, the operator of an interstate natural gas pipeline. Article 7 of the contract provides a mechanism for determining the price of gas sold pursuant to the contract:

> Subject to the further provisions of this Article 7, Buyer [Southern] agrees to pay Seller [Explo], for each MMBTU of gas delivered hereunder, the highest applicable maximum lawful price authorized to be paid by Buyer and collected by Seller pursuant to the [Natural Gas] Policy Act and the regulations, orders or rulings promulgated thereunder.

The contract further provides that, in the event that the government deregulates gas prices, the price will be determined in the following manner:

> If at any time during the term of this agreement the [Federal Energy Regulatory] Commission (or any other authority having jurisdiction over the prices charged for gas sold hereunder) ceases to have jurisdiction over such matters or ceases to exercise price control over the price for gas sold under this agreement, the price to be charged after the cessation date shall be redetermined at Seller's election (exercised by written notice to Buyer no later than thirty (30) days after such deregulation date), and the redetermined price shall be....

After setting forth a mechanism for determining the price based on the average of the three highest prices being paid under contracts between pipeline purchasers and non-affiliated producers for gas produced in Mississippi, the contract then provides:

> Thereafter, at Seller's sole election, the price hereunder shall be redetermined initially on January 1 or July 1, whichever occurs first following deregulation and then annually thereafter on the same basis and subject to the same limitations. However, if Seller waives or allows to lapse its right to request a price redetermination for any year, such waiver or lapse shall not prejudice Seller's right to call for a subsequent price redetermination on the same basis and subject to the same limitations after the expiration of such year.

Section 102(c) of the Natural Gas Policy Act of 1978, 15 U.S.C. § 3312(c), defined the gas sold under the Explo-Southern contract as "new" gas, and, as such, federal regulations governed the price of the gas from the inception of the contract until January 1, 1985. On January 1, 1985, the federal government deregulated the price of "new" gas. Explo did not invoke the price redetermination provision of the contract when deregulation occurred. Beginning on January 1, 1985, Southern, contending that the contract did not cover the situation where the government deregulated gas and the seller did not invoke the price redetermination provision, reduced the price paid for gas purchased from Explo. Southern, pursuant to the open price provision of Miss. Code Ann. § 75-2-305 (1981), reduced the price paid to a "reasonable price." Explo, contending that, in the absence of its election to invoke the price redetermination provision, the contract price should remain at the maximum lawful price for the last month of deregulation, brought suit for the difference between the last regulated price and the amount paid by Southern.

Southern answered and moved the district court to stay the proceedings pending arbitration of the dispute. Southern argued that the following provision of article 7 of the contract allowed Southern to invoke arbitration: "If any controversy arises under the provisions of this Article 7, the matter shall be submitted to and determined by arbitration under Section F

of Exhibit A hereto." Section F provides a detailed mechanism for arbitration. A United States Magistrate heard argument on the motion and denied the motion on the ground that the controversy between the parties did not arise under article 7 of the contract and thus was not within the scope of the contract's arbitration provisions. Southern applied for review of the magistrate's order, and the district court denied review and affirmed the magistrate's order. This appeal followed.

## II.

■ Southern presents a single issue in this interlocutory appeal: whether the district court erred in approving the magistrate's ruling that the arbitration provision did not cover the parties' dispute. In order to decide the correctness of the magistrate's and the district court's rulings, we must interpret the arbitration provision of the contract. *See Houston General Insurance Co. v. Realex Group, N.V.*, 776 F.2d 514, 515 (5th Cir.1985) ("Questions of contract interpretation and whether a provision is inherently ambiguous both present questions of law fully reviewable on appeal."). For, while we do not address the merits of a dispute when considering an application for stay pending arbitration, *City of Meridian, Mississippi v. Algernon Blair, Inc.*, 721 F.2d 525, 528 (5th Cir. 1983), we do interpret the arbitration provision because such contract interpretation is a matter for the courts. 9 U.S.C. § 3; *Commerce Park at DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334, 338 (5th Cir.1984). The controversy must come within the contract's arbitration provision before we can order arbitration. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

■ While we are interpreting the provision, we must remain mindful of the strong federal policy favoring arbitration. *See Southland Corp. v. Keating,* 465 U.S. 1, 10–11, 104 S.Ct. 852, 858, 79 L.Ed.2d 1, 12 (1984). Doubts as to the availability of arbitration must be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "[U]nless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted." *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir.1979) (citing *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and *Seaboard Coastline R.R. Co. v. National Rail Passenger Corp.*, 554 F.2d 657 (5th Cir.1977) (per curiam)).

■ We now turn to the task of deciding whether the parties' dispute falls within the arbitration provision. Explo urges us to find that the dispute is outside the narrower "arises under" language rather than the broader language used in many other arbitration provisions. *Cf. Commerce Park*, 729 F.2d at 336 ("All claims, disputes and other matters in question ... arising out of, or relating to, the Contract Documents or the breach thereof ... shall be decided by arbitration...."). Explo also argues that, because Southern maintains that the contract does not provide a price under the current economic and regulatory conditions, the dispute does not "arise under" the contract. In other words, Explo argues that the dispute cannot arise under the contract because Southern argues that the contract does not provide a price under the current circumstances. Explo, however, conveniently ignores its own claim. Explo's claim is for breach of contract. Certainly Explo's claim for breach of the price provision of the contract "arises under" the contract, and, therefore, the "controversy arises under the provisions of this Article 7." Thus, the arbitration clause applies to this dispute.

Furthermore, article 7 of the contract deals with pricing, and the dispute between the parties concerns only pricing. When the parties' dispute centers on the interpretation of a contract provision, the dispute

falls under an arbitration clause even when the contract uses the narrower "arises under" language rather than the broader "arising out of" language. *Mediterranean Enterprises, Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1464 (9th Cir.1983). Therefore, the district court should refer the dispute to arbitration.

The order of the district court is reversed and the matter is remanded with instructions to order the issues in dispute referred to arbitration and to enter appropriate orders to stay all judicial proceedings pending completion of that arbitration.

REVERSED and REMANDED.