**ASSOCIATED BUILDERS CORPORATION, Plaintiff-Appellee,**

v.

**RATCLIFF CONSTRUCTION COMPANY, INC., Defendant-Appellant.**

No. 86–4767.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1987.

---

Charles F. Seemann, Jr., Bobby M. Harges, Deutsh, Kerrigan, & Stiles, New Orleans, La., for defendant-appellant.

Robert G. Nida, Gold, Simon, Weems, Bruser, Sharp, Sues & Rundell, Alexandria, La., for plaintiff-appellee.

Before GOLDBERG, HILL and JONES, Circuit Judges:

EDITH H. JONES, Circuit Judge:

■ The issue in this case is whether the district court erred in refusing to stay its proceedings pending arbitration.[1] Defendant-Appellant Ratcliff Construction Company ("Ratcliff") was the prime contractor of the Alien Detention Center in Oakdale, Louisiana. In October 1984, Ratcliff subcontracted with Associated Builders Corp. ("ABC") for certain roofing work on the project. The subcontract required ABC to procure surety bonds within a short time. In January 1985, Ratcliff terminated the subcontract on the grounds that ABC had

failed to procure the requisite bonds. Thereafter, ABC filed this diversity action for wrongful termination. Ratcliff moved for a stay pending arbitration, citing the arbitration clause in the subcontract, and it now appeals from the district court's refusal to issue the stay. We reverse.

Ratcliff contends that the parties' subcontract requires this dispute to be submitted to arbitration. Before a stay order is appropriate, the district court must find that the contract between the parties authorizes arbitration of the dispute in question. Interpretation of contractual arbitration provisions is colored, however, by the strong national policy favoring arbitration, recently reaffirmed by the Supreme Court in *Shearson/American Express, Inc. v. McMahon*, — U.S. —, —, 107 S.Ct. 2332, 2336, 96 L.Ed.2d 185 (1987). In our circuit, citing Supreme Court authority, it has been held that "[U]nless it can be said with positive assurance that an arbitration clause is not succeptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted." *Explo Inc. v. Southern Natural Gas Co.*, 788 F.2d 1096, 1098 (5th Cir. 1986).

■ Two paragraphs of the parties' subcontract are largely determinative of this issue. Paragraph 36 provides as follows:

If at any time any controversy should arise between the Contractor and Subcontractor with respect to any matter or thing involved in this Subcontract or construction project, which controversy is not controlled or determined by the paragraph above [concerning disputes involving the Owner] or other provisions of this Subcontract, then said controversy shall be decided as follows:

[i] The Subcontractor shall conclusively be bound by and abide by the Contractor's decision respecting said controversy, unless the Subcontractor shall commence arbitration proceedings as herein-

1. ABC questions whether the district court's refusal to stay is a non-final order over which this court has no jurisdiction. The order is appealable under 28 U.S.C. § 1292(a)(1). *Explo Inc. v. Southern Natural Gas Co.*, 788 F.2d 1096 (5th Cir.1986); *Houston General Insurance Co. v. Realex Group, N.V.*, 776 F.2d 514 (5th Cir.1985).

after provided within thirty [30] days following such decision.

[ii] If the Subcontractor decides to appeal from the decision of the Contractor, then the controversy shall be decided by arbitration in accordance with the then current rules of the Construction Industry Arbitration Rules of the American Arbitration Association, and the arbitration decision shall be final and binding on both parties; provided, however, that proceedings before the American Arbitration Association shall be commenced by Subcontractor not less than thirty [30] days following Contractor's decision.

[iii] No dispute shall interfere with the progress of the general construction, and Subcontractor shall proceed with its work....

Paragraph 37 continues:

37. The Subcontractor does covenant and agree that if for any reason this Contract is not completed as contemplated herein and any dispute shall arise over the entitlement or rights of the Subcontractor, the Subcontractor's sole recourse shall be an action to enforce the several terms and provisions of this Contract, and no action shall lie in favor of the Subcontractor in the nature of quantum meruit, quantum valebant or quasicontract.

Ratcliff contends that this is a broadly worded agreement committing "any controversy ... with respect to any matter or thing involved in this Subcontract" to arbitration unless otherwise provided by the contract. This proposition is difficult to challenge, but ABC makes the effort. ABC urges that paragraph 37 is such an "other provision", which dispenses with arbitration in the event the contract is not completed. ABC contends that paragraph 36 is a "disputes" clause that contemplates arbitration only when construction of the roof is underway, based on the language "no dispute shall interfere with the progress of the general construction...." Finally, ABC suggests a broad interpretation of paragraph 36 is inconsistent with paragraph 22, providing that the contractor's determination that the subcontractor has defaulted and that termination is neces-

sary "shall be conclusive as to the contractor's right to proceed...." We find ABC's arguments unpersuasive.

Paragraph 37 does not expressly constitute an exception to the arbitration provision of the contract. It limits the remedies available to the subcontractor in the event of contract termination, for he agrees not to assert common extracontractual causes of action such as quantum meruit, quantum valebant or quasicontract. The statement that the subcontractor's sole recourse shall be "an action" to enforce the terms of the contract does not, however, determine or limit the forum in which he may resolve the dispute. Webster's New World Dictionary, Second College Edition (1978), cited by ABC, defines "action" as "a legal proceeding by which one seeks to have a wrong put right; lawsuit." Although a lawsuit is one type of legal proceeding bearing on the definition of "action," it is not an exclusive definition. An arbitration proceeding equally comports with this dictionary's definition of "action." Moreover, viewed in the context of our policy favoring arbitrability, we do not find the use of one word in paragraph 37 to control its interpretation vis-a-vis paragraph 36 and constitute an exception to the arbitration requirement.

Paragraph 22 does not change this result. It permits the contractor, following appropriate notice, to terminate the subcontract, and it provides that his determination on termination "shall be conclusive" of the parties' rights. Even this paragraph need not, however, be read to prevent arbitration of controversies that have arisen prior to or in connection with the sub-contract. It, like paragraph 37, enforces a limit on the substantive relief that the subcontractor may seek and be awarded in arbitration, but it does not authorize him not to forego arbitration.

ABC's final argument rests on semantic similarities between this arbitration clause and the clauses construed in two rather venerable decisions, neither of which is controlling in this circuit. *United States v. Duggan*, 210 F.2d 926 (8th Cir.1954); *Compudyne Corp. v. Maxon Construction Co.*,

*Inc.,* 248 F.Supp. 83 (E.D.Pa.1965). Both of these cases held that an arbitration clause covering disputes "arising under" a contract did not encompass termination, for in that event there was no contract under which the dispute could arise. Similar reasoning was rejected by this court in *Explo, Inc. v. Southern Natural Gas Co.,* 788 F.2d at 1098, and we are bound by this precedent. Second, to the extent those courts adverted to contractual language requiring the contractor to "proceed diligently" with performance during arbitration as a basis for limiting arbitration to ongoing performance matters, we disagree with them. That arbitration should not impede the progress of the work does not in those cases, or in the one before us, necessarily imply that arbitration may only occur if the work continues. The limitation construed from such language in these prior cases bespeaks an inhospitable attitude toward arbitration which has not withstood the test of time.

ABC's last contention is that La.Civ.Code art. 2765 [2] disallows arbitration concerning the termination of the subcontract. ABC reads too much into this provision. Although Article 2765 may authorize the contractor to terminate the subcontract, it does not prevent arbitration of the subcontractor's damages or other rights on termination. *Stone v. Stone,* 292 So.2d 686 (La. 1974), cited by ABC, is not to the contrary. The Louisiana Supreme Court stated in *Stone* merely that it is "doubtful that the agreement to arbitrate 'any dispute ... over any matter pertaining to *operation* of the partnership' intended to include within its scope the right of either party to demand *dissolution* ... in the absence of language more clearly specifying such intent." 292 So.2d at 691 (emphasis in original). The Ratcliff-ABC contract, by contrast, demands arbitration of "any controversy ... with respect to any matter or thing involved in the Subcontract...." We rely on this broader language.

For the foregoing reasons, the judgment of the district court is REVERSED, and the cause REMANDED for further proceedings.

**2.** "The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require."