UNITED OFFSHORE COMPANY,
Plaintiff–Appellee,

v.

SOUTHERN DEEPWATER PIPELINE
COMPANY, Defendant–Appellant.

No. 89–4461
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 30, 1990.

John M. Wilson, Liskow & Lewis, George J. Domas, Robert L. Theriot, New Orleans, La., for defendant-appellant.

Ray A. Barlow, Scott C. Sinclair, Dana P. Karam, Hargrove, Ramey, Guyton & Barlow, Shreveport, La., for plaintiff-appellee.

Before GEE, WILLIAMS, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

## FACTS AND PROCEEDINGS BELOW

United Offshore Company sued Southern Deepwater Pipeline Company in state court to enjoin an arbitration proceeding commenced by Southern Deepwater. Southern Deepwater removed the suit claiming jurisdiction under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349(b)(1), and 28 U.S.C. § 1331. The district court denied Southern Deepwater's motion to compel arbitration and granted a preliminary injunction prohibiting Southern Deepwater from proceeding with arbitration.[1] Southern Deepwater now seeks to dissolve the injunction and to compel arbitration via an interlocutory appeal taken pursuant to 9 U.S.C. § 15.

United Offshore and Southern Deepwater are equal partners in Sea Robin Pipeline Company. Sea Robin operates a natural gas pipeline which transports gas from the outer continental shelf to the coast of Louisiana for delivery into interstate gas markets. The joint venture agreement provides for a management committee and an operator. The committee exercises general oversight whereas the operator is responsible for running the operation. The management committee consists of eight members: four are appointed by United Offshore and four by Southern Deepwater. The operator was appointed by United Offshore but Southern Deepwater reserved the right to have United Offshore tender its resignation to the management committee.

The dispute between the two partners arose when Southern Deepwater sought to exercise its right to remove Sea Robin's operator. The operator tendered its resignation but conditioned resignation upon acceptance by the management committee and the appointment of a new operator.

The management committee became hopelessly deadlocked[2] and Southern Deepwater sought to have the matter resolved by arbitration. United Offshore, on the other hand, wants to litigate.

The issue before this Court, therefore, is whether this dispute should be resolved in an arbitral or in a judicial forum. This issue is, of course, merely the initial skirmish in a larger dispute. Before the merits of this clash may be reached, we must first deal with two threshold issues: jurisdiction and the standard of review.

## JURISDICTION

■ It is black letter law that we may exercise jurisdiction only if there is both (1) original subject matter jurisdiction and (2) appellate jurisdiction.

### (1) Subject Matter Jurisdiction

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, "does not create any independent federal-subject matter jurisdiction." *Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 861 n. 9, 79 L.Ed.2d 1 (1984). *See also Mesa Oper. Ltd. Part. v. Louisiana Intrastate Gas*, 797 F.2d 238, 240 (5th Cir.1986). The FAA simply provides that courts must decide whether a particular dispute is subject to arbitration and that this issue is governed by federal law in contracts involving interstate commerce. *See AT & T Technologies, Inc. v. Communication Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) and *Mesa Oper.*, 797 F.2d at 243–44. Thus, we must look elsewhere for a source of federal jurisdiction.

It is clear that the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1349(b)(1), provides jurisdiction over the present dispute. Section 1349(b)(1), provides jurisdiction over "cases and contro-

---

1. In addition to the present proceeding, Southern Deepwater brought suit in state court. The state court judge ordered the parties to proceed to arbitration subject to a determination in federal court of the "parameters of arbitration." The court below, therefore, did not interfere with a state court proceeding by enjoining the arbitration.

2. Paragraph 3(c) of the joint venture agreement requires a majority vote of United Offshore's representatives and a majority vote of Southern Deepwater's representatives in any action by the management committee.

versies arising out of, or in connection with any operation conducted on the outer continental shelf which involves exploration, development, or production of ... minerals." OCSLA defines production to include the "transfer of minerals to shore." 43 U.S.C. § 1331(m). The present dispute is one step removed from the actual transfer of minerals to shore since it involves a contractual dispute over the control of an entity which operates a gas pipeline. In *Amoco Production Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1210 (5th Cir.1988) we noted that the "efficient exploitation of the mineral of the outer continental shelf, owned exclusively by the United States ..., was at least a primary reason for OCSLA." We reasoned that a take or pay contract fell within § 1349's jurisdictional grant because the resolution of the dispute would affect the exploitation of minerals on the outer continental shelf. Since the present dispute has a similar nexus with production, it too falls within OCSLA's grant of jurisdiction.

### (2) Appellate Jurisdiction

Although the FAA does not provide for original subject matter jurisdiction, it does govern interlocutory appeals over disputes involving arbitration. This area of the law was characterized by " 'Byzantine peculiarities' " but has been greatly simplified by the enactment of 9 U.S.C. § 15 in November of 1988. *Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729, 731–32 (3d Cir. 1989) (quoting *New England Power Co. v. Asiatic Petroleum Corp.*, 456 F.2d 183, 189 (1st Cir.1972)). *See also Jeske v. Brooks*, 875 F.2d 71, 73 (4th Cir.1989). The rule now is that orders favoring litigation over arbitration are immediately appealable whereas those which favor arbitration at the expense of litigation are not. *Ballay*, 878 F.2d at 732. 9 U.S.C. § 15(a)(2) authorizes an interlocutory appeal of an order enjoining arbitration and vests us, therefore, with jurisdiction over the present appeal.

### STANDARD OF REVIEW

■ United Offshore argues that since the decision of a district court to grant a preliminary injunction is reviewed under an abuse of discretion standard, the judgment of the court below should be reviewed under this deferential standard. *See, e.g., Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir.1985). Southern Deepwater counters that a decision that an arbitration provision governs a particular dispute is a matter of contract interpretation which presents an issue of law to be reviewed de novo. *See, e.g., Explo, Inc. v. Southern Natural Gas Company*, 788 F.2d 1096, 1098 (5th Cir.1986) and *First Investors v. American Capital Financial Service*, 823 F.2d 307, 309 (9th Cir.1987).

Preliminary injunctions are not always reviewed under an abuse of discretion standard. In *Thornburgh v. American College of Obstetricians*, 476 U.S. 747, 757, 106 S.Ct. 2169, 2177, 90 L.Ed.2d 779 (1986), for example, the Court reasoned "if a district court's ruling rests solely on a premise as to the applicable rule of law, and the facts are established on a premise as to the applicable rule of law, and the facts are established or of no controlling relevance, that ruling may be reviewed [de novo] even though the appeal is from the entry of a preliminary injunction." The facts in the instant case are not in dispute and the central issue is one of contract interpretation. The judgment of the court below, therefore, will be reviewed de novo.

Our decision to exercise de novo review is fully consonant with Congress's decision to promote arbitration by enacting the F.A.A. Arbitration provides a relatively quick and inexpensive resolution to disputes. De novo review after a trial on the merits comes too late to preserve that right.

### THE INITIAL SKIRMISH

■ A preliminary injunction may be granted only if the moving party proves "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not issued; (3) that [the] threatened injury to the movant outweighs any damage the injunction may do to the

opponent; and (4) that the injunction will not disserve the public interest." *E.E.O.C. v. Cosmair, Inc., L'Oreal Hair Care Div.,* 821 F.2d 1085, 1088 (5th Cir.1987) (quoting *Gearhart Indus., Inc. v. Smith Int'l, Inc.,* 741 F.2d 707, 710 (5th Cir.1984)). The preliminary injunction is an extraordinary remedy, however, and the movant must clearly carry the burden of persuasion on each factor. *See Mississippi Power and Light Co. v. United Gas Pipeline Co.,* 760 F.2d 618, 621 (5th Cir.1985). The district court decided only the first prerequisite as that was the only factor seriously contested by the parties. It is, therefore, the only issue which we will consider on appeal.

■ For United Offshore to succeed on the merits, it must overcome a presumption that the dispute is arbitrable:

> While we are interpreting the [arbitration] provision, we must remain mindful of the strong federal policy favoring arbitration.... Doubts as to the availability of arbitration must be resolved in favor of arbitration.... Unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted.

*Explo,* 788 F.2d at 1098 (citations omitted). *See also Associated Corp. v. Ratcliff Const. Co.,* 823 F.2d 904, 905 (5th Cir.1987) and *Mar–Len of La., Inc. v. Parsons–Gilbane,* 773 F.2d 633, 635–36 (5th Cir.1985). We must also be mindful, however, that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T,* 475 U.S. at 648, 106 S.Ct. at 1418 (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

Southern Deepwater rests its case on two provisions of the joint venture agreement. Paragraph 15 states "any controversy or claim between United Offshore and Southern Deepwater arising out of the interpretation of the provisions of this agreement shall be settled by arbitration." Southern Deepwater contends that it merely seeks to remove Sea Robin's operator which it has a right to do under paragraph 6(c). Paragraph 6(c) states:

> *Change of Operator.* United may, and at the request in writing of Southern Deepwater will, tender to the Management Committee its resignation as Operator for Sea Robin; and the Management Committee thereupon shall appoint another Operator for Sea Robin. In such event, United shall have no further responsibility or authority pursuant to this Paragraph 6 except that which is related to the transfer of responsibility to the new Operator.

Southern Deepwater's characterization of this dispute and of paragraph 6(c) is flawed. Paragraph 6(c) does not give Southern Deepwater the right to remove Sea Robin's operator but only the right to have it tender its resignation. United Offshore has tendered its resignation and, thus, the only issue which is squarely governed by paragraph 6(c) is not an issue in this case. Southern Deepwater, moreover, not only seeks to have the present operator removed but also to have a new one appointed. The management committee is unable to decide whether to accept United Offshore's resignation or who the new operator should be and this is the crux of the present dispute.[3]

The contract provides no mechanism for resolving a management deadlock. Paragraph 6(c) governs the removal of the operator but says nothing about tie votes. The contract does contain provisions for resolving such disputes in certain other instances. If the management committee is unable to decide on elections that Sea Robin must make for income tax purposes, para-

**3.** Southern Deepwater was more honest about characterizing this dispute in its demand for arbitration. In its claim for relief, Southern Deepwater sought to have United Offshore removed as operator and Southern Deepwater appointed as the new operator. Southern Deep-

water admitted that due to a "deadlock within the Management Committee, the Management Committee has neither forced the removal of ... the operator nor appointed another operator."

graph 11(b) authorizes public accountants to resolve the matter. If one of the parties executes a contract for the purchase of gas, the members of the management committee which were not appointed by the contracting party determine whether to accept the contract.

The issue before us, therefore, is whether a dispute not governed by the joint venture agreement may be resolved by its interpretation. We must be careful, however, to distinguish between two different meanings of the word interpretation. Interpretation can mean an "explanation of what is not immediately plain or explicit" or an "explanation of actions, events, or statements by pointing out ... motives or by relating particulars to general principles." *Webster's Third New International Dictionary* 1182 (1982). This dichotomy has long been recognized in the law. A long running dispute simmers over whether judges should apply the law as written or whether they should interpret it according to the intent of the legislator or according to general principles of equity. *Compare* 1 W. Blackstone, *Commentaries on the Laws of England* 67–74 (arguing that judges should find and not make the law) *with* B. Cardozo, *The Nature of the Judicial Process* 135 (arguing that judges must legislate "to keep the doctrines up to date with the mores by continual restatement") (1921).[4]

In the law of contracts this conflict is generally of little moment because both types of interpretation are considered legitimate.[5] If the contract provides means to resolve the dispute, the judge need look no further. If the contract does not squarely govern a dispute, one looks to course of usage between the parties, to the custom in the industry, or to principles of justice for grounds with which to settle the dispute. The mere fact that the parties have not provided for a means to resolve the dispute does not preclude the judiciary from resolving it. The judiciary, in short, is empowered to resolve disputes between private parties.

The power of an arbitrator, unlike that of a judge, is limited by the provision in which the parties agree to arbitrate. The parties "cannot be required to submit to arbitration any dispute which [they have] not agreed so to submit." *AT & T,* 475 U.S. at 648, 106 S.Ct. at 1418 (citations omitted). When the parties agree to a broad arbitration provision, they can agree that matters which are not resolved by the contract are to be settled by arbitration. In *Texaco, Inc. v. American Trading Trans. Co.,* 644 F.2d 1152 (5th Cir.1981), for example, a collision occurred between a chartered vessel and a dock which belonged to the vessel owner. We noted that the parties could have agreed to submit the matter to arbitration by agreeing to arbitrate all disputes involving the vessel. The parties chose, however, to arbitrate only disputes arising out of the charter agreement. Since the contract did not govern the tort, the dispute was not arbitrable.

By agreeing to arbitrate matters involving contract interpretation, the parties chose a narrow arbitration provision. *See e.g., Beckham v. William Bayley Co.,* 655 F.Supp. 288, 291 (N.D.Tex.1987) and *Hannah Furniture Co. v. Workbench, Inc.,* 561 F.Supp. 1243, 1244 (W.D.Pa.1983). The standard broad arbitration provision recommended by the American Arbitration Association provides "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by

---

**4.** This dichotomy is not confined to the common law but has long been recognized in the civil law as well. *See, e.g.,* La.Civ.Code art. 9 ("When a law is clear ..., [it] shall be applied as written.") and art. 10 ("When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.") *See also* F. Gény, *Methode d'Interpretation et Sources en Droit Privé Positif* 21–24 (2d ed. 1954) (trans. by the Louisiana Law Institute).

**5.** Disputes as to the proper scope of interpretation crop up most frequently in the area of constitutional law. In *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), for example, the majority reached out to principles of natural justice to interpret the Constitution. The dissent by Justice Black derided this approach as illegitimate because it was not the "duty of this Court to keep the Constitution in tune with the times." 381 U.S. at 522, 85 S.Ct. at 1702.

arbitration." COMMERCIAL ARBITRATION RULES 3 (Am. Arbitration Ass'n 1988). We were faced with another example of a broad arbitration provision in *Mar–Len*, 773 F.2d 633. The contract called for the arbitration of "any dispute ... with respect to the interpretation or performance" of the contract. *Id.* at 634. We reasoned that when parties choose such broad language, only the "absence of any express provision excluding a particular grievance from arbitration" or "the most forceful evidence of a purpose to exclude the claim from arbitration" would render the dispute non-arbitrable. *Id.* at 636 (citations omitted).

When the parties agree to submit to arbitration only disputes involving interpretation, they intend that their dispute be governed by the four corners of their agreement. In *Hannah Furniture Co.*, for example, the defendant terminated a franchise agreement with the plaintiff. The plaintiff brought suit and the defendant sought to arbitrate the dispute. The franchise agreement called for arbitration of all disputes involving questions of interpretation. *Id.*, 561 F.Supp. at 1244. The court noted that the agreement authorized termination of the franchise agreement if the plaintiff breached any of the terms of the contract. Since the dispute could only be resolved by reference to the contract, the court held that the matter involved interpretation and was arbitrable. The case at bar is, of course, very different. The contract provides no means by which the arbitrator may resolve the dispute.

By confining the term interpretation as used in agreements to arbitrate to the plain meaning of the contract within which the arbitration provision is contained, we both effectuate the intent of the parties and promote arbitration. It is clear that the parties intended that only the contract be interpreted by the arbitrator and not general principles of justice or industry custom or course of dealing between the parties. The arbitrator draws his power from the contract and when the provision governing arbitration restricts that power to an interpretation of the contract, it leaves the arbitrator powerless to decide matters on which the agreement is silent. By cabining the power of the arbitrator within the limits set by the parties, arbitration, moreover, is promoted. Parties would be less willing to enter into arbitration agreements if the power of an arbitrator is not confined by the terms of the agreement. Otherwise, an "arbitrator would not be constrained to resolve only those disputes that the parties have agreed in advance to settle by arbitration, but, instead, would be empowered to impose obligations outside the contract limited only by his understanding and conscience." *AT & T*, 475 U.S. at 651, 106 S.Ct. at 1419. We hold, therefore, that when the parties to a contract agree to arbitrate disputes involving interpretation, they do not agree to arbitrate matters not governed by the contract.

The decision of the district court is AFFIRMED.