Jess Homer Hall, Jr., Liddell, Sapp, Zivley, Hill & Laboon, Houston, TX, for Plaintiffs.

Martha Susan Hardie, Burns, Wooley & Marseglia, Houston, TX, Robert Hayden Burns, Burns, Wooley & Marseglia, Houston, TX, for defendant.

**BROOKLYN UNION EXPLORATION COMPANY, INC., Smith Offshore Exploration Company, Inc., J.G.F. Inc., King Ranch Oil & Gas, Inc., and Yarbco, Inc.**

v.

**TEJAS POWER CORPORATION.**

**Civil Action No. G–95–363.**

United States District Court,
S.D. Texas,
Galveston Division.

July 15, 1996.

### ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT–MATTER JURISDICTION

KENT, District Judge.

This action consists of claims for the breach of contracts governing the purchase of natural gas produced on the outer continental shelf ("OCS"). Now before the Court is Defendant's Motion to Dismiss for Lack of Subject–Matter Jurisdiction. The Motion is **GRANTED**.

Plaintiffs entered into one or more purchase agreements with Defendant pursuant to which Defendant admittedly received designated quantities of gas. These agreements, which have since been terminated, required Defendant to purchase the gas at a price determined according to a set formula, unless certain specified events invoke a procedure for recalculation of the price. The Complaint avers that circumstances occurred which triggered the recalculation provisions, but that Defendant refused to abide by the contemplated procedures for recalculation. Solely on this basis, Plaintiffs assert breach of contract claims to recover the difference between the payments received from Defendant and the price as determined after proper recalculation. Defendant disputes liability on the grounds that no recalculation of the purchase price was required under the terms of the contracts.

■ As the parties wishing to invoke the jurisdiction of the Court, Plaintiffs bear the burden of proving that subject-matter juris-

diction exists. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). Plaintiffs' arguments rely exclusively on 43 U.S.C.A. § 1349(b)(1) (West 1986) as a basis for jurisdiction.[1] The Court narrows its analysis accordingly. *Cf. Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988).

Section 1349(b)(1)(A) provides, in pertinent part, that "the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals [including natural gas], of the subsoil and seabed of the outer Continental Shelf." 43 U.S.C.A. § 1349(b)(1)(A). Neither party questions the existence of an "operation" on the OCS involving the "production of minerals" within the meaning of section 1349(b)(1)(A).[2] The issue at hand is whether the instant controversy "aris[e] out of, or in connection with" such an operation.

The United States Supreme Court has not yet been explored the jurisdictional grant of section 1349(b)(1)(A) as that section applies to breach of contract claims. Although several United States Courts of Appeals have rendered opinions concerning the jurisdictional scope of section 1349(b)(1)(A), none has established a bright-line test for determining whether a contractual dispute falls within this section's purview. Among those appellate courts to consider the subject, the United States Court of Appeals for the Fifth Circuit, which is the Court of direct appeal for this litigation, has lead the path toward deciphering the full meaning of section 1349(b)(1)(A)'s "arising out of, or in connection with" clause. The line of cases rendered by the Fifth Circuit establish two distinct bases for jurisdiction over contractual disputes[3] under section 1349(b)(1)(A), as explained below.

The Fifth Circuit first discussed the application of section 1349(b)(1)(A) to contractual disputes in *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223 (1985). In *Laredo,* the plaintiff commenced a breach of contract action to recover payment for the partial construction of a platform to be permanently affixed to the OCS. *Id.* at 1225. The defendant maintained that no obligation to make payment arose because the plaintiff had improperly constructed the platform. *Id.* The Fifth Circuit, broadly characterizing the jurisdictional grant of section 1349(b)(1)(A), held that jurisdiction existed because "th[e] litigation involves only that portion of the contract between [the plaintiff] and [the defendant] that relates to the actual building of a platform of the Outer Continental Shelf." *Id.* at 1226–27, 1228 (finding that construction of a platform on the OCS constitutes an "operation" involving "exploration, development, or production" within the meaning of section 1349(b)(1)(A)). The Court was, however, careful to limit the scope of its holding by emphasizing that the actual controversy directly pertained to development/production on the OCS: "We hold that, insofar as the alleged breach of contract relates directly to platform construction, the controversy is on 'arising out of, or in connection with' an operation conducted on the Outer Continental Shelf involving the development of mineral resources and therefore is encompassed within the district court's grant of original jurisdiction." *Id.* at 1225.

The Fifth Circuit developed a second approach to finding jurisdiction over contractual disputes under section 1349(b)(1)(A) in *Amoco Prod. Co. v. Sea Robin Pipeline Co.,* ("*Sea Robin*"), 844 F.2d 1202 (5th Cir.1988). In *Sea Robin,* the controversy between the parties was whether the defendant was obli-

---

1. The Court notes that the Complaint is completely devoid of any reference to substantive federal law and that complete diversity does not appear to exist.

2. The Court's finding that jurisdiction is lacking on other grounds obviates the need to make this determination.

3. Prior applications of section 1349(b)(1) by the Fifth Circuit to disputes not of a contractual nature are not particularly useful for determining jurisdiction in the instant case. *E.g., In re Wilson Indus.,* 886 F.2d 93, 94–96 (5th Cir.1989) (noting that section 1349(b)(1) confers jurisdiction over an action founded upon personal injuries suffered on a drilling rig located on the OCS).

gated either to purchase a minimum quantity of gas from the plaintiff or to pay the plaintiff not to do so under the "take-or-pay" provisions of the governing purchase agreement. *Id.* at 1203, 1207. The Fifth Circuit's jurisdictional analysis relied heavily upon the finding that "the efficient exploitation of the minerals of the OCS ... was at least a primary reason for [the Outer Continental Shelf Lands Act]." *Id.* at 1210. After explaining that interruptions in the flow of gas caused by the ongoing contractual dispute impact upon the total recovery which may be had from the well, the Court held that jurisdiction existed over the controversy because the "dispute alters the progress of production activities on the OCS [and consequently] threatens to impair the total recovery of the federally-owned minerals from the reservoir or reservoirs underlying the OCS." *Id.* (discussing the unique characteristics of oil and gas wells).

Since the rendering *Laredo* and *Sea Robin*, the Fifth Circuit has decided all jurisdictional issues concerning contractual disputes under section 1349(b)(1)(A) strictly through application of the principles established in those opinions.[4] In *United Offshore Co. v. Southern Deepwater Pipeline Co. ("Southern Deepwater")*, 899 F.2d 405 (5th Cir.1990), the Court concluded that jurisdiction existed over a dispute as to whether a partnership agreement permitted the defendant to discharge the operator of a gas pipeline connecting to the OCS, because the "dispute ha[d] a similar nexus with production" to the

dispute at issue in *Sea Robin* for the reason that "the resolution of the dispute would affect the exploitation of minerals on the outer continental shelf." *Id.* at 406–07. In *EP Operating Ltd. Partnership v. Placid Oil Co. ("Placid Oil")*, 26 F.3d 563 (5th Cir. 1994), the Court found jurisdiction over a dispute concerning the right to partition property located on the OCS, because the property rights at issue concerned property which "exist[s] solely to conduct operations on the OCS for the production of mineral wealth" and, therefore, resolution of the dispute "would affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources," as in *Sea Robin* and *Southern Deepwater. Id.* at 569–70. The Fifth Circuit has not rendered any opinions indicating the existence of unexplored avenues for finding jurisdiction over contractual disputes under section 1349(b)(1)(A).[5]

■ As applied to the case at bar, the prior holdings of the Fifth Circuit do not support the exercise of jurisdiction under section 1349(b)(1)(A). Jurisdiction cannot be found under a *Laredo* analysis, because the present dispute strictly concerns contractual provisions governing the price of gas, not provisions governing its production or development. Nor can jurisdiction be found under a *Sea Robin* analysis, because resolution of the instant dispute—which centers exclusively on the price recalculation provisions of a contract long-since terminated—will not alter the flow of production or otherwise affect

---

4. Prior to *Sea Robin*, the Fifth Circuit also decided *Tidelands Royalty B Corp. v. Gulf Oil Corp.*, 804 F.2d 1344 (5th Cir.1986). In that case, the Court summarily endorsed a district court's finding of jurisdiction over a claim that one block on the OCS was draining gas from another block on the OCS. *Id.* at 1347 n. 1. The district court's analysis consisted of nothing more than citations to *Laredo* and to an opinion of a sister district court. *Tidelands Royalty B Corp. v. Gulf Oil Corp.*, 611 F.Supp. 795, 798–99 (N.D.Tex.1985).

5. The Fifth Circuit upheld a district court's application of the Outer Continental Shelf Lands Act, as opposed to general maritime law, without specifically addressing whether subject-matter jurisdiction could be predicated on section 1349(b)(1)(A) in *Union Texas Petroleum Corp. v. PLT Engineering, Inc. ("PLT")*, 895 F.2d 1043 (5th Cir.), *cert. denied*, 498 U.S. 848, 111 S.Ct.

136, 112 L.Ed.2d 103 (1990). In *PLT*, the underlying dispute was whether a contractor was contractually entitled to payment for work performed on the OCS despite the contractor's failure to pay subcontractors for actually performing this work. *Id.* Section 1349(b)(1)(A) merely provided one of two alternate basis for the district court's finding of subject-matter jurisdiction, and therefore *PLT*'s tacit acceptance of jurisdiction cannot be deemed a commentary on the jurisdictional scope of section 1349(b)(1)(A). *Id.* Furthermore, *PLT* is factually distinguishable from the case at bar, because the contractual duty allegedly breached in *PLT* directly arose from the performance of work on the OCS, whereas contractual duty allegedly breached in the instance case arose from Plaintiffs' contention that the default price setting deviated from the actual market value. *Id.*

the efficient exploitation of natural resources in the OCS. Plaintiffs advance several arguments that jurisdiction can be found under a *Sea Robin* analysis, but these arguments are unpersuasive.

First, Plaintiffs argue in the abstract that production is driven by price and therefore a dispute over price must invoke the Court's jurisdiction. The Court agrees that changes in price can affect production, but only to the extent that the current or future price is altered. A controversy exclusively over the price of gas which has already been produced, as in the instant case, simply does not implicate the interest expressed by Congress in the efficient exploitation of natural resources on the OCS. *See, e.g., Sea Robin,* 844 F.2d at 1210. Plaintiffs' first argument accordingly lacks merit.

Second, Plaintiffs argue that jurisdiction exists because the federal government is entitled to a percentage of any recovery awarded to Plaintiffs by virtue of its royalty interest in the purchased gas. This argument is founded upon a misidentification of the federal interests supporting jurisdiction in *Sea Robin,* which based jurisdiction specifically upon the congressional interest in efficiently exploiting the natural resources of the OCS, and not more generally upon the purely pecuniary interests of the federal government. *Placid Oil,* 26 F.3d at 570 n. 15 (explaining the nature of the congressional interest underlying the reasoning of *Sea Robin*). Plaintiffs' second argument, therefore, also lacks merit.

Finally, Plaintiffs argue that jurisdiction exists because production on the OCS is affected by the purchase contracts when considered as a whole. This argument, however, contravenes the spirit of multiple Fifth Circuit opinions stressing the importance of isolating the particular contractual provisions in dispute for purposes of determining jurisdiction. *E.g., Sea Robin,* 844 F.2d at 1210; *Laredo,* 754 F.2d at 1226–27. This Court accordingly finds, without expressing an opinion on the validity of Plaintiffs' underlying factual assertion, that Plaintiffs' final argument must also be rejected.

In sum, none of the opinions on section 1349(b)(1)(A) rendered by the Fifth Circuit establish jurisdiction over the instant controversy. Under these circumstances, this Court will not require the parties to incur the burdens and expense of further litigation in this forum. The Court recognizes that the development of section 1349(b)(1)(A) jurisprudence may still be incomplete, but it is equally clear that the substantive issues governing the outcome of this dispute have nothing to do with the OCS or the expressed congressional interest in its resources. The Court accordingly finds that jurisdiction is lacking.

For the reasons stated above, Defendant's Motion to Dismiss for Lack of Subject–Matter Jurisdiction is **GRANTED**. Consequently, each and all claims asserted are hereby **DISMISSED WITHOUT PREJUDICE**. The parties are ORDERED to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** not to file anything further on this issue in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled from the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Order issued by the Court this date, Defendant's Motion to Dismiss for Lack of Subject–Matter Jurisdiction is **GRANTED**. Consequently, this action is hereby **DISMISSED WITHOUT PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**THIS IS A FINAL JUDGMENT.**