23 F.3d 406
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 FIRST UNION REAL ESTATE EQUITY AND MORTGAGE INVESTMENTS,
Plaintiff-Appellee,
v.
CROWN AMERICAN CORPORATION; Middletown Mall, Inc.,
Defendants-Appellants.
 No. 93-3459.
 United States Court of Appeals, Sixth Circuit.
 April 26, 1994.
 
 Before: MILBURN and GUY, Circuit Judges; and TIMBERS, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Defendants Crown American Corporation ("Crown") and Middletown Mall, Inc. ("Middletown") appeal the district court's denial of their motion for a stay of proceedings pending arbitration. The issue is whether the arbitration clause contained in the Tenancy in Common Agreement executed by Crown and plaintiff First Union Real Estate Equity and Mortgage Investments ("First Union") is applicable to First Union's claims. For the reasons that follow, we reverse and remand.
 
 I.
 
 2
 Crown and First Union each own a 50 percent undivided interest in improved real property known as the Middletown Mall Shopping Center ("the Mall") in Fairmont, West Virginia. On December 3, 1970, Crown and First Union executed a Tenancy in Common Agreement ("the Agreement"), which governs the rights and obligations of Crown and First Union with respect to any transfer, assignment, or encumbrance of their interests in the Mall. The Agreement also addresses the rights of the parties if one of the parties were to become insolvent and provides for the distribution of any condemnation award.
 
 
 3
 Crown and First Union both leased their interests in the Mall to Middletown, an affiliate of Crown,[1] by separate but virtually identical leases executed on the same day as the Agreement. The First Union-Middletown Lease ("the Lease") is the lease important to this case. The Lease provides that Middletown will pay a fixed rent plus a percentage of gross rents received from tenants. Under the Lease, Middletown assumed "the full and sole responsibility for the condition, operation, repair, alteration, improvement, replacement, maintenance and management of the [Mall]." Lease p 10.03, J.A. 181. The Lease requires that Middletown obtain the written consent of First Union for capital improvements costing more than $100,000 and that Middletown furnish First Union with a guaranty from Crown that the work will be completed and paid for. Id. at p 11.02, J.A. 181-82.
 
 
 4
 The Agreement acknowledges the execution of the separate leases and requires Crown to obtain First Union's written approval before modifying its lease with Middletown or exercising its remedies as a landlord. In the event of Middletown's default under its lease with First Union, the Agreement requires Crown, upon First Union's request, to join with First Union in terminating both leases.
 
 
 5
 In 1975 and 1977, Crown and First Union amended the Agreement to change the distribution rights as to condemnation awards. Other provisions of the amendments added to the Agreement provide that Crown's right to rents from Middletown under their lease be conditioned upon Middletown's having paid all rents due to First Union under their separate lease. If First Union has not received the full rent due under its lease with Middletown, then Crown and its affiliates cannot retain any rents or income derived from the Mall, except for management fees, and must pay or cause to be paid the amounts due First Union. However, the amendments further provided that Middletown's use of rents or income derived from the Mall to pay expenses relating to the ownership and operation of the Mall would not constitute retention of rents.
 
 
 6
 The Agreement also contains an arbitration clause:
 
 
 7
 In the event of any dispute between the parties arising out of this Agreement, or with respect to the operation of the Premises, such dispute shall be submitted to arbitration....
 
 
 8
 Agreement p 7, J.A. 158. The Premises referred to in the arbitration clause refers to the Mall. The Lease provides for arbitration "[i]n such cases where this Lease expressly provides for the settlement of a dispute or claim by Arbitration and only in such cases." Lease p 24.01, J.A. 189. None of the Lease provisions referred to above expressly provides for dispute resolution by arbitration.
 
 
 9
 In 1989, work was commenced to make physical changes to the Mall so that a Hills Department Store could enter the space formerly occupied by a Sears store. In November 1991, Crown demanded that First Union reimburse it for $1,700,000, which represented 50 percent of the total expense incurred in acquiring a lease with the Hills Department Store. The cost of the physical changes seems to account for these costs, but the record is unclear as to exactly what these expenses represent. On December 13, 1991, after First Union refused Crown's demand for payment, Crown initiated arbitration proceedings pursuant to the arbitration provision of the Agreement to resolve the dispute over First Union's obligation to reimburse Crown. In it brief on appeal, Crown contends that its position in the arbitration is that First Union is obligated by its duties as a tenant in common and under the Agreement to make this reimbursement.
 
 
 10
 First Union filed this diversity action against Crown and Middletown for a declaratory judgment and money damages on January 28, 1992, and amended its complaint on September 2, 1992. The first two counts of the amended complaint allege that Middletown breached its lease with First Union by refusing to pay certain amounts due and by subleasing space to the Federal Bureau of Investigation without the prior approval of First Union. The third count alleges that Crown tortiously interfered with the contractual relationship between First Union and Middletown. The complaint alleges that the FBI sublease consisted of two parts, a lease between Middletown and the FBI, and a contract between Crown and the FBI that required certain payments to Crown for tenant improvements, utilities, and maintenance services. First Union contends that these payments to Crown would be considered gross rents under the Lease and that the Lease provides that only Middletown can execute such subleases. Therefore, First Union alleges that Crown has prevented Middletown and First Union from acting in accordance with their agreement. The fourth count sought a declaratory judgment to determine the rights of the parties under the Lease and the Agreement as to First Union's responsibility to reimburse Crown for the $1,700,000 it had demanded.
 
 
 11
 Pursuant to the Federal Arbitration Act, 9 U.S.C. Sec. 3, Crown and Middletown moved for a stay of proceedings as to the third and fourth counts of the amended complaint pending arbitration. The district court denied the requested stay, holding that the disputes represented in the third and fourth counts of First Union's amended complaint were not subject to the arbitration clause of the Agreement because neither claim "implicates any substantive provision of the Agreement," and "the Leases deal specifically with responsibility for repairs, alterations, improvements, maintenance, management and capital improvements--the very subject giving rise to the disputes here." Memorandum Opinion and Order at 7, J.A. 265. This appeal pursuant to 9 U.S.C. Sec. 16(a)(1)(A) timely followed.[2]
 
 II.
 
 12
 The Federal Arbitration Act requires the court, upon application of one of the parties, to stay the proceedings of any action brought "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. Sec. 3. In this case, the district court denied the requested stay of counts three and four because it believed that the issues involved in those counts were not subject to the arbitration provision of the Agreement. Because this determination is primarily a matter of contract interpretation, a question of law, we review the district court's denial of defendants' motion for a stay pending arbitration de novo. United Offshore Co. v. Southern Deepwater Pipeline Co., 899 F.2d 405, 407 (5th Cir.1990); Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1462-63 (9th Cir.1983); see also Wiepking v. Prudential-Bache Sec., Inc., 940 F.2d 996, 998 (6th Cir.1991) (stating that review of an order to compel arbitration is de novo); First Am. Nat'l Bank v. Fidelity & Deposit Co., 5 F.3d 982, 984 (6th Cir.1993) (stating that contract interpretation is a question of law and therefore subject to de novo review).
 
 
 13
 A district court considering a party's motion for a stay pending arbitration must determine if the claim that the party seeks to stay involves a dispute that the parties agreed to arbitrate. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). Because of the strong federal policy in favor of arbitration, all doubts as to whether the arbitration clause covers a dispute should be resolved in favor of arbitration. Id. "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Id. "[A]rbitration should not be denied unless it may be said with positive assurance that the clause does not cover the dispute." Georgia Power Co. v. Cimarron Coal Corp., 526 F.2d 101, 106 (6th Cir.1975), cert. denied, 425 U.S. 952 (1976); see also Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co., 706 F.2d 155, 160 (6th Cir.1983).
 
 
 14
 In the Agreement, First Union and Crown agreed to arbitrate any dispute between them that arose out of the Agreement, or with respect to the operation of the Mall. An arbitration clause requiring arbitration of any dispute arising out of an agreement is "extremely broad." Cincinnati Gas, 706 F.2d at 160. A claim, regardless of the legal label assigned to it, falls within the scope of this extremely broad arbitration clause if the allegations underlying the claim or its defenses involve matters covered by the agreement. See Mitsubishi Motors, 473 U.S. at 622 n. 9, 624 n. 13; J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Cir.1988). For example, in J.J. Ryan & Sons, an importer had entered into exclusive distribution agreements with several related manufacturers. The distribution agreement required arbitration of "[a]ll disputes arising in connection with" the distribution agreement. The Fourth Circuit held that the arbitration clause "does not limit arbitration to the literal interpretation or performance of the contract. It embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." Id. at 321. Thus, the court held that the importer's tort claims, including interference with contract, were arbitrable under the distribution agreement. In this case, the arbitration clause in the Agreement is even broader, for it requires arbitration not only where a dispute arises out of the Agreement but also where a dispute arises "with respect to the operation of the [Mall]." It cannot be said with positive assurance that the Agreement's arbitration clause does not cover First Union's third and fourth counts. The third count alleges that Crown tortiously interfered with the contractual relationship between First Union and Middletown by entering an agreement with one of Middletown's sublessees that required payments to Crown for tenant improvements, utilities, and maintenance services, payments that would be considered gross rents under the First Union-Middletown Lease. Crown contends that its rights as co-owner of the Mall support the actions challenged in count three. It argues that because the Agreement established the joint ownership relationship with First Union, the dispute represented by count three arose out of the Agreement. First Union, on the other hand, argues that where the dispute is not governed by the substantive provisions of the contract containing the arbitration clause, the fact that the dispute arises out of the parties' relationship is not sufficient to make them arbitrable under an arbitration clause requiring arbitration of disputes arising out of the contract. First Union contends that the Lease and not the Agreement controls this case, and therefore Crown's argument that count three arose out of the parties' relationship is unpersuasive.
 
 
 15
 We do not need to decide which party has the correct view of the meaning of the "arising out of" portion of the arbitration clause as it affects count three because even if this dispute did not implicate any substantive provision of the Agreement, as the district court held, it would still be subject to arbitration under the Agreement's arbitration clause because it is a dispute with respect to the operation of the Mall. Crown was allegedly receiving payments from a tenant for improvements, utilities, and maintenance services. Providing such services can certainly be considered "operation of the Mall." It may be that Crown had no right to take on such operations, but this is for the arbitrator to decide. First Union agreed to arbitrate all disputes with Crown that involved the operation of the Mall. The allegations underlying First Union's interference with contract claim involve the operation of the Mall. Therefore, First Union's interference with contract claim against Crown is subject to arbitration under the Agreement.
 
 
 16
 The fourth count is likewise subject to arbitration under the Agreement. The fourth count alleged that there was an actual controversy between the parties as to the interpretation of the Lease and the Agreement and sought a declaratory judgment to determine the rights of the parties under those agreements as to First Union's responsibility to reimburse Crown for the $1,700,000 it had demanded for the physical changes made to the Mall in order to rent space to a department store. A controversy over the interpretation of the Agreement obviously arises out of the Agreement. Furthermore, this controversy over the $1,700,000 arose because Crown claimed that First Union had a duty as a co-tenant under the Agreement to share in certain expenses. Crown may be wrong about this or it may be right, but this issue is for the arbitrator to decide. A court should not attempt to decide the merits of the dispute. "[I]f the issues presented are on their face referable to arbitration under the parties' agreement, the inquiry of the court is at an end." Cincinnati Gas, 706 F.2d at 160; see also AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 650 (1986) (holding that the court in determining if a dispute is subject to arbitration has "no business weighing the merits" of a dispute or "determining whether there is particular language in the written instrument which will support the claim") (quoting United Steelworkers v. American Mfg. Co., 363 U.S. 564, 568 (1960)). Moreover, the underlying allegations concerning physical changes to the Mall needed to lease space to a department store involve the "operation of the Mall." Therefore, it cannot be said with positive assurance that the arbitration clause of the Agreement does not cover the fourth count.
 
 
 17
 First Union argues, and the district court held, that the Lease governs the disputes in counts three and four and therefore the arbitration clause in the Agreement does not apply. First Union contends that the Agreement has nothing to do with Middletown's obligation to pay gross rents or the parties' financial responsibility for the physical alterations to the Mall, whereas the Lease contains provisions directly dealing with the payment of gross rents and responsibility for physical alterations. First Union argues that because the subject matter of the disputes is governed by the Lease and not the Agreement, the arbitration provision of the Agreement is inapplicable.
 
 
 18
 First Union's argument is unpersuasive. First, counts three and four are against Crown who was not even a party to the Lease. The fact that First Union and Middletown may not have agreed to arbitrate certain disputes does not mean that First Union and Crown did not agree to arbitrate similar disputes they had with each other. It makes no difference that Middletown and Crown are under common control. First Union has offered no compelling reason as to why the corporate distinctiveness of these entities should be disregarded. Second, even if we were to accept First Union's premise that the Lease governs the dispute more readily than the Agreement does, a holding that the Agreement's arbitration clause is inapplicable would not be compelled. First Union and Crown agreed to arbitrate not only disputes arising out of the Agreement but also all disputes with respect to the operation of the Mall. Therefore, even if the Agreement did not govern the dispute, the dispute is still subject to arbitration because it was a dispute with respect to the operation of the Mall.
 
 
 19
 First Union contends that an arbitration clause, no matter how broadly worded, can only extend to disputes implicating the substantive provisions of the contract that contains the arbitration clause. First Union relies on Seaboard Coast Line Railroad v. Trailer Train Co., 690 F.2d 1343 (11th Cir.1982). In Seaboard, the defendant, Trailer Train, was an enterprise formed by numerous railroad companies for the purpose of maintaining a pool of railroad cars to be loaned to member railroads. The railroads borrowed cars from Trailer Train pursuant to a license agreement known as a "Car Contract." In addition, the member railroads would execute formal leases of railroad cars with Trailer Train in order to qualify for certain tax credits. When the Internal Revenue Service disallowed a tax credit of Seaboard, one of the member railroads, Seaboard filed an action to compel Trailer Train to arbitrate. Seaboard claimed that the dispute was arbitrable under the arbitration provision contained in the Car Contract, which provided for arbitration of "[a]ny difference or dispute arising hereunder." Id. at 1345.
 
 
 20
 The court in Seaboard refused to compel arbitration, explaining, "our concern is not the breadth of the arbitration clause, but the breadth of the Car Contract. Although the arbitration clause is broad, it is applicable only to disputes arising under the Car Contract, which governs provision of railroad cars at a per diem rate, and nothing more." Id. at 1350. First Union argues that as in Seaboard, "in the present case it is the breadth of [the Agreement] that is relevant--not the breadth of its arbitration clause." Brief for Appellee at 18. First Union overlooks the significant difference in the arbitration clause the Eleventh Circuit was concerned with in Seaboard and the arbitration clause in this case. First, it may well be that contracts which require arbitration only where the dispute arises "under" the contract, as in Seaboard, limit arbitration to disputes governed by the contract. But this need not be the case where the arbitration clause requires arbitration of disputes arising "out of" the contract. See Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd., 1 F.3d 639, 642 (7th Cir.1993). More importantly, the arbitration clause involved in the present case is not limited to disputes arising out of the contract but also requires arbitration of disputes arising with respect to the operation of the Mall. If, as First Union adamantly argues, the Agreement does not govern the operation of the Mall, the inclusion of the operation-of-the-Mall language in the Agreement's arbitration clause shows the parties' intent that disputes between the parties concerning the Mall would be arbitrable even if the dispute was not governed by the specific provisions of the Agreement.
 
 
 21
 The other cases relied on by First Union are similarly distinguishable. For example, in Swensen's Ice Cream Co. v. Corsair Corp., 942 F.2d 1307 (8th Cir.1991), the court held that claims alleging breach of a distribution agreement that did not contain an arbitration clause were not arbitrable under a franchise agreement that provided for arbitration of "any dispute ... with respect to the interpretation, performance or alleged breach of [the franchise] Agreement." Id. at 1309. In Swensen's, unlike the present case, the arbitration clause in one of the contracts between the parties (the franchise agreement) was not broad enough to encompass disputes involving a breach of a different contract between the parties (the distribution agreement). The cases relied on by First Union do not have arbitration clauses as broad as that found in the Agreement. See John F. Harkins Co. v. Waldinger Corp., 796 F.2d 657, 662-63 (3d Cir.1986) (holding that subcontracting agreement that required arbitration only for disputes over amounts to be paid for order changes did not require arbitration of a dispute over expenses incurred by the subcontractor due to delays by the contractor), cert. denied, 479 U.S. 1059 (1987); Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp., 348 F.2d 693, 698 (2d Cir.1965) (holding that clause requiring arbitration of all disputes "arising out of or in connection with" a distribution agreement did not cover disputes that merely arose out of the working relationship between the parties and not out of or in connection with the distribution agreement), cert. denied, 383 U.S. 909 (1966).[3]
 
 
 22
 The district court erred by focusing on the respective substantive provisions of the Lease and the Agreement to determine which contract would control the outcome of the parties' dispute. The only appropriate issue was whether counts three and four were subject to arbitration under the Agreement; i.e., did the disputes "arise out of the Agreement" or "with respect to the operation of the Mall." Count three was a dispute that arose with respect to the operation of the Mall because the underlying allegation was that Crown interfered with First Union's and Middletown's contractual relations by operating the Mall itself as opposed to leaving the operation of the Mall to Middletown. Count four not only was a dispute with respect to the operation of the Mall but also a dispute that arose out of the Agreement. Crown contends that First Union owes it $1,700,000 because of First Union's duty as a co-tenant under the Agreement. Indeed, count four on its face asked for a declaration of rights under the Agreement. It cannot be said with positive assurance that the broad arbitration clause agreed to by First Union and Crown in the Agreement does not cover First Union's claims in counts three and four. Accordingly, the district court erred in denying Crown's motion for a stay of counts three and four pending arbitration.
 
 III.
 
 23
 For the reasons stated, the order of the district court denying a stay of counts three and four of First Union's amended complaint is REVERSED, and this case is REMANDED to the district court for further action consistent with this opinion.
 
 
 
 *
 Honorable William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 The record is unclear as to whether Middletown is a subsidiary of Crown or simply under common control with Crown
 
 
 [2]
 9 U.S.C. Sec. 16 provides in relevant part:
 (a) An appeal may be taken from--
 (1) an order--
 (A) refusing a stay of any action under section 3 of this title, ....
 
 
 [3]
 First Union also cites Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 871-73 (7th Cir.1985), for the proposition that where one of two contracts contains an arbitration provision, the court must decide which contract governs the dispute. But that case merely decided that a contract containing an arbitration clause had been superseded by a contract without an arbitration clause