United States Court of Appeals,

Fifth Circuit.

No. 91–1405.

Tommy M. PARKER, Plaintiff–Appellant,

v.

Timothy RYAN and United States Department of Treasury, Office of Thrift Supervision,
Defendants–Appellees.

April 30, 1992.

Appeal from the United States District Court for the Northern District of Mississippi.

Before JONES, EMILIO M. GARZA, Circuit Judges, and LEE, District Judge.[1]

EDITH H. JONES, Circuit Judge:

Plaintiff-appellant Tommy M. Parker sought an injunction against defendants-appellees Office of Thrift Supervision (OTS) and its director seeking to modify or suspend a Temporary Cease and Desist Order issued against him by the OTS. The OTS countered with a request for temporary restraining order to enforce the Cease and Desist Order, followed by its own request for a preliminary injunction based on Parker's failure to comply with the order. The district court granted OTS's requests. It acted upon the cross-motions for preliminary injunction without an evidentiary hearing.

On appeal, Parker would have us vacate and remand for the district court's refusal to permit him to conduct discovery and hold an evidentiary hearing on the basis for the agency order. We conclude that meaningful judicial review was performed in this instance and therefore affirm.

I.

FACTS

Tommy M. Parker (Parker) is a former director, officer, loan committee member, and shareholder of Mississippi Savings Bank (MSB). MSB was closed and placed into receivership by

---

[1] District Judge for the Southern District of Mississippi, sitting by designation.

the Office of Thrift Supervision (OTS) in May, 1990. On November 16, 1990, OTS issued a Notice of Charges against ten MSB "institution-affiliated parties," including Parker, pursuant to 12 U.S.C. § 1818(b). The Notice of Charges detailed eight areas in which Parker and others violated the law, breached their fiduciary duties, or otherwise engaged in unsafe practices that in the agency's estimation would cause or had caused MSB depositors to suffer losses. Contemporaneously, the OTS issued a Temporary Cease and Desist Order against Parker, requiring him to post security of over $13,000,000, to provide certain financial statements, and to desist from disposing of personal assets, except to pay for ordinary household expenses under $5,000. The asset freeze was ameliorated by a hardship clause under which Parker could demonstrate necessity for expenditures above the $5,000 limit. OTS also commenced formal administrative proceedings against Parker.

On November 26, 1990 Parker filed this action seeking to set aside, limit, or modify the temporary order; he also filed an application for preliminary injunction and served written discovery requests on the OTS. The OTS responded by filing its motion for temporary restraining order and preliminary injunction and a motion for protective order. On January 2, 1991, the district court granted a TRO directing Parker to comply with OTS's cease and desist order; the TRO was extended by agreement of the parties. On March 8, 1991, the court denied Parker's injunctive request while granting that of OTS to enforce the temporary cease and desist order. The preliminary injunction was entered without an evidentiary hearing. Parker's pending discovery requests were later denied.

## II.

### STATUTORY BACKGROUND

The OTS has authority to pursue cease and desist proceedings against an institution when it determines that the institution, or any institution-affiliated party, is engaging, or is about to engage, in unsound business practices, or is violating or about to violate the law. 12 U.S.C. § 1818(b)(1).[2]

---

[2]This description of OTS's statutory authority is stripped to those attributes essential for our discussion.

The proceeding commences with charges setting forth facts constituting the alleged violations and fixes a time and place for a hearing to determine whether a cease and desist order should issue. *Id.*

OTS also has authority to issue temporary cease and desist orders and to take affirmative action to prevent dissipation of assets, when it determines that the violation or threatened violation is likely to cause insolvency or significant dissipation of assets before the completion of § 1818(b) administrative proceedings. 12 U.S.C. § 1818(c)(1). A temporary cease and desist order may require affirmative action by the regulated party and may include "any requirement authorized under" § 1818(b)(6). *Id.* Restitution, reimbursement or a guarantee against loss may be ordered pending the § 1818(b) administrative proceedings. *Spiegel v. Ryan,* 946 F.2d 1435 (9th Cir.1991). OTS does not have to hold a hearing before entering a temporary cease and desist order.

To respond to the astonishingly broad temporary orders that OTS may enter, a depositary institution or institution-affiliated party is given ten days to seek an injunction from federal district court to set aside, limit, or suspend the order pending the completion of the administrative proceedings. 12 U.S.C. § 1818(c)(2). As was noted by the two-judge concurring opinion in *Spiegel, supra,* the temporary cease and desist order is only "effective" when entered, § 1818(c)(1), but it does not become "enforceable" until ten days later, when the government is entitled to an enforcement order unless the respondent has invoked a court's assistance to obtain injunctive relief. 12 U.S.C. § 1818(c)(1); (c)(2); (d). The ten-day hiatus effectuates a respondent's opportunity to seek judicial review of the temporary order. When there is a threatened or actual violation of a temporary cease and desist order, the OTS may also apply to federal court for an injunction to enforce such order. The court has the duty to order such injunction if there has been a violation or threatened violation or failure to obey the OTS order. 12 U.S.C. § 1818(d).

III.

ANALYSIS

Parker availed himself of the opportunity to obtain judicial review of OTS's temporary order requiring him to post security, to supply to OTS recent financial statements of himself and immediate family members, and to confine his asset dispositions to ordinary household expenditures less than $5,000. During the district court proceedings, Parker obtained assurance from OTS, reiterated in a court order, that because of financial impossibility, Parker need not post the entire $13,000,000 as security. The amount of security required of Parker was finally set at $100,000. He also negotiated for more time to provide updated financial statements, asserting that he could not properly complete them until the final amount of his 1990 federal income tax liability was known. OTS agreed, for a while, to accept this excuse. Whether Parker actually complied with the order to limit his expenditures, or has simply used the inconclusiveness of court proceedings to evade that limit, is hotly disputed; the district court held him in contempt later in 1991 for alleged noncompliance with its orders.

The significant benefits, including delay, that Parker obtained while seeking judicial review of the temporary order cast doubt on the sincerity of his appellate position. While he successfully jockeyed to alleviate the conditions of the temporary order, on what appear at times to have been pretty flimsy grounds, his brief portrays a man undone by the district court's callous failure to convene an evidentiary hearing on the facts alleged in support of OTS's order. We agree that judicial review of a temporary cease and desist order embodies procedural and substantive assurances that the agency's drastic action was justified. *Compare FDIC v. Mallen,* 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988). We do not agree that such assurances were lacking in this case.

Parker argues that judicial review of a temporary order only rubber-stamps the agency's order unless the court conducts a factual inquiry to determine (a) the basis for OTS's charges of misconduct, (b) the likelihood that alleged practices or violations will harm the institution while administrative charges are pending, and (c) whether OTS's order properly preserves the *status quo.* He further contends that the district court deprived him of the opportunity to challenge OTS's order

on the merits because it issued the order now on appeal, a preliminary injunction enforcing OTS's temporary order, the same day Parker filed a brief requested by the court on the necessity for a factual hearing. The court then allegedly compounded the error by refusing to permit discovery. These complaints ignore that district courts do not conduct factual hearings for fun, nor is it their role to review the agency's action *de novo,* especially in the urgent context that a temporary cease and desist order suggests: a factual hearing should only be held if there are real factual disputes to resolve.

Judicial review of a temporary OTC cease and desist order is provided, in the sections set forth above, by means of cross-motions of a respondent and OTS for injunctive relief. A temporary order presupposes ongoing administrative proceedings accompanied by a full evidentiary hearing and judicial review of the ultimate agency order. It thus seems that judicial review of the temporary order should recognize the drastic-yet interim-nature of that order. The object of judicial review is to ensure that a factual and statutory basis exists for the agency's action and that the temporary order comports with the scope of OTS's powers.[3] Unlike a preliminary injunction request in private litigation, however, these statutory injunction requests are filed after an OTS investigation has been conducted and after the agency has determined that a regulatory emergency exists, *i.e.* that laws or essential duties are being violated and that the institution or regulatory program are imminently jeopardized. The district court's review should not duplicate the regulatory record; the question is how to assimilate that record in a meaningful proceeding that balances the OTS's power and significant responsibility with a respondent's right to avoid unjustified punitive actions.

OTS contends that judicial review is adequately carried out if the agency presents a *prima facie* case of illegality, based upon the agency's demonstrated compliance with its procedures and the statutory grounds for issuing a temporary order. On the understanding that such a *prima facie* case

---

[3]Parker does not specifically contend that OTS's temporary cease and desist powers violate due process, nor could he do so successfully in light of the expedited judicial review available. *Spiegel v. Ryan, supra; Paul v. Office of Thrift Supervision,* 763 F.Supp. 568 (S.D.Fla.1990), *aff'd sub nom, Paul v. Ryan,* Nov. 6, 1991, unpub'd order of 11th Cir.

requires a verified statement of the specific facts giving rise to violations or improprieties, we agree. The posture of this case strongly resembles our decision in *CFTC v. Muller,* 570 F.2d 1296 (5th Cir.1978), affirming an injunction pending administrative proceedings against a commodities broker charged with misappropriating customers' funds, in violation of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.9 (1977). The Commodity Futures Trading Commission had authority, similar to that of OTS, to seek injunctive relief for violations of commodities laws, 7 U.S.C. § 13a–1, and its allegations of fraud were quite specific. The court approved a temporary freeze of the defendant's assets (subject to limited ordinary living expenses) as "reasonably necessary to assure that the court's jurisdiction would not be defeated" by disposition if disgorgement were ultimately orders. 570 F.2d at 1301.

In this case, OTS issued a 35–page notice of charges against MSB and ten institution-affiliated parties, which listed eight areas of regulatory deficiencies and described with particularity the facts and people involved in each questionable transaction.[4] The temporary cease and desist order applied to Parker and two others and in 20 pages recounted the specific basis for the monetary losses that justified immediate pecuniary remedies. The facts contained in these documents were attested under penalty of perjury by an OTS supervisor who had been responsible for MSB's examination. There is little doubt that OTS documented a *prima facie* case of illegal activity by Parker in his position at MSB.

For two reasons, we disagree with Parker's contention that the agency should have been required to prove its *prima facie* case in the district court. First, an evidentiary hearing should not be required in the absence of a material disputed fact. When the agency's allegations are as specific

---

[4]The OTS alleged, among other things, (1) poor business judgment in extending credit to and purchasing used car loans from All American Finance, Inc. which would likely result in a loss of $7.5 million, (2) poor business judgment in extending credit to Quanterra Alpha Limited Partnership which classification indicates that at least $1.3 million of a $6.79 million loan is questionable, (3) that respondents improperly classified loans which resulted in the improper payment of dividends to MSB shareholders, (4) a non-cash dividend consisting of stock in Texas Preferred General Agency to MSB shareholders, and (5) that restitution is in order for bonuses and expenditures improperly paid by MSB. The facts involved in these events were fully and carefully articulated and Parker's role in each transaction was explained.

and detailed as in this case, they are ordinarily either simply right or wrong. If they are right, an evidentiary hearing on a temporary order would be redundant. If they are alleged wrong by a sworn denial, this would either set the stage for further administrative consideration or would permit a prompt, narrowly focused hearing.

Second, Parker has not in any event demonstrated the utility of an evidentiary hearing in this case. Despite having filed numerous, voluminous pleadings in the district court and in this court, Parker has never denied the factual accuracy of the acts that OTS attributed to him. His plea for discovery rings hollow in the face of allegations that his own memory or personal financial records should have permitted him to verify or deny with ease. Further, he has not challenged OTS's specific determinations that these acts violated the standards set out in § 1818(b). His conclusory complaints about the scope of permissible relief and the adequacy of the notice of charges are specious. No doubt the district court, having read Parker's submissions and noted the absence of *any* issue of disputed fact, reached the same conclusions when he granted injunctive relief without an evidentiary hearing.

IV.

CONCLUSION

For the foregoing reasons, the district court conducted adequate judicial review, and its judgment is AFFIRMED.