IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-3930

_____


LANDMARK LAND COMPANY, INC., ET AL.,

                                        Plaintiffs-Appellees,

        versus

OFFICE OF THRIFT SUPERVISION and TIMOTHY RYAN, Director,

                                        Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

(April 29, 1993)


Before WILLIAMS, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:


        The Office of Thrift Supervision (OTS) appeals from the
district court's granting of injunctive relief to both Landmark
Land Company, Inc. (Landmark) and some of its directors, the
individual plaintiffs.  The OTS had issued a temporary cease-and-
desist order against Landmark and the other plaintiffs.  The order
prohibited them from dissipating the assets of the subsidiaries of
a savings association and also froze their personal assets pending
the resolution of the underlying administrative cease-and-desist

1

proceeding. The district court's injunction suspended the temporary order. On appeal, the OTS argues that the district court erred substantively and procedurally in granting the preliminary injunction. We find that the district court erred procedurally, and we vacate and remand the injunction for reconsideration by the district court.

## I. FACTS AND PRIOR PROCEEDINGS

Plaintiff-Appellees Gerald G. Barton, Bernard G. Ille, William W. Vaughan, III, and Joe W. Walser, Jr. were the directors of plaintiff-appellee Landmark Land Company, Inc., a Delaware corporation and holding company. Since the mid-1970s, Landmark has developed and operated several golf courses and resort communities. In 1982 Landmark acquired a financially troubled thrift in New Orleans, Louisiana and renamed it Landmark Savings Bank, S.S.B. (a savings bank chartered by the State of Louisiana). In 1986 Landmark Savings Bank acquired another thrift, to which it transferred its assets in 1989. The resulting thrift was named Oak Tree Savings Bank, S.S.B. (Old Oak Tree).

Old Oak Tree owned Clock Tower Place Investments, Ltd. (Clock Tower), a first-tier subsidiary. Clock Tower in turn owned numerous second-tier subsidiaries, including Landmark Land Company of California, Inc.; Landmark Land Company of Carolina, Inc.; Landmark Land Company of Oklahoma, Inc.; Landmark Land Company of Florida, Inc.; and Landmark Land Company of Louisiana, Inc.

2

(collectively, the subsidiaries). Barton, Ille, Vaughan, and Walser served as directors of both Landmark and Old Oak Tree. Barton, Vaughan, and Walser also served as directors and/or officers of various ones of the subsidiaries.

In August 1989, Congress passed the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA).[1] Of critical importance was the change in the capitalization requirements by FIRREA so that Landmark could no longer use its real estate holdings to capitalize Old Oak Tree. Although Landmark sought to sell the golf courses and resort properties held by its subsidiaries, it was unsuccessful. Between April 1990 and September 1991, Landmark entered into two contracts to sell the subsidiaries' real estate holdings. Both contracts, however, fell through. The OTS refused to approve the first, and after the OTS stepped in to renegotiate the second, the buyer withdrew the offer.

Meanwhile, Old Oak Tree was incurring significant losses in 1989, 1990, and 1991. After failing to meet minimum capital requirements in July 1990, Old Oak Tree submitted a capital plan that OTS rejected. Then, in January 1991, Old Oak Tree and OTS executed a Consent Agreement that imposed certain restrictions and requirements on the management of Old Oak Tree. Old Oak Tree

---

[1] FIRREA abolished both the Federal Home Loan Bank Board and the Federal Savings and Loan Insurance Corporation, and it created the Office of Thrift Supervision (OTS) to oversee and regulate savings associations.

agreed among other things to obtain prior written approval from OTS before entering into "any material transaction."

After the second sales contract fell through, the boards of directors of the six subsidiaries met in October 1991 to consider their options. Barton, Walser, and Vaughan were present at several of these meetings, but chose to abstain from voting. The boards voted to file Chapter 11 bankruptcy, and such a filing occurred on October 11, 1991, in the United States Bankruptcy Court for the District of South Carolina. Each subsidiary then obtained from the South Carolina bankruptcy court a temporary restraining order, which prevented Old Oak Tree and the OTS from exercising shareholder rights to change management to enable withdrawal of the bankruptcy petitions.

The OTS responded on October 13, 1991, by invoking its statutory powers pursuant to 12 U.S.C. § 1818 to commence a cease-and-desist proceeding. The OTS has the authority to pursue cease-and-desist proceedings against an institution and any institution-affiliated parties (such as directors and officers) when it decides that they are engaging in unsound business practices, violating the law, or breaching an agreement with the OTS. 12 U.S.C. § 1818(b)(1). Such a proceeding was commenced in this case by filing a Notice of Charges setting out the allegations and scheduling an administrative hearing. The OTS then appointed the Resolution Trust Corporation (RTC) as receiver for Old Oak Tree and

chartered Oak Tree Federal Savings Bank of New Orleans, Louisiana (New Oak Tree).

The Notice of Charges filed against the plaintiffs alleged that the individual plaintiffs had breached their fiduciary duties by acting to file the bankruptcy petitions and by failing to inform the OTS either of the impending bankruptcy or of their conflict of interest. The Notice of Charges further asserted that the plaintiffs had violated the Consent Agreement, and the OTS imposed civil monetary penalties: one million dollars on each of the individual directors, and on Landmark $500,000 plus an additional $500,000 for each day beyond October 13 that the individual plaintiffs failed to withdraw the bankruptcy petitions.

The OTS undertook to act under its authority to issue broad temporary cease-and-desist orders when it determines that the unsound practice or violation is "likely to cause insolvency or significant dissipation of assets." 12 U.S.C. § 1818(c)(1). Such a temporary cease-and-desist order may be entered without a hearing and may require affirmative action. Parker v. Ryan, 959 F.2d 579, 581-82 (5th Cir. 1992). A temporary order becomes effective upon service, but the institution receiving the order has ten days within which it can seek judicial review. 12 U.S.C. § 1818(c)(1) and (2).

The OTS issued the Temporary Order To Cease and Desist (the Temporary C&D), and it drastically limited the plaintiffs' authority and froze the personal assets both of the plaintiffs and of their family members. The plaintiffs timely applied to the district court in New Orleans to set aside, limit, or suspend the Temporary C&D pursuant to 12 U.S.C. § 1818(c)(2). Although the district court denied the plaintiffs' initial request for a temporary restraining order, it scheduled a preliminary injunction hearing for November 1, 1991. Before the hearing, however, the South Carolina bankruptcy court issued findings and enjoined the RTC from exercising any shareholder rights over the subsidiaries and their management. On November 1, the Louisiana district court took notice of the bankruptcy court's findings, suspended the Temporary C&D, and *sua sponte* transferred the plaintiffs' application to the South Carolina bankruptcy court.

The RTC appealed the South Carolina bankruptcy court's injunction, and the OTS appealed the Louisiana district court's transfer. On November 26, 1991, a panel of this court held that it was error to transfer the application to South Carolina and denied the OTS's motion to stay the preliminary injunction pending the appeal of that order. Landmark Land Co., Inc. v. Office of Thrift Supervision, 948 F.2d 910 (5th Cir. 1991). The South Carolina bankruptcy court's injunction was subsequently reversed by the U.S. Court of Appeals for the Fourth Circuit. Thus, the RTC was authorized to assert its ownership rights over the subsidiaries.

<u>In re Landmark Land Co. of Okla, Inc.</u>, 973 F.2d 283 (4th Cir. 1992). At the end of 1992, the RTC was continuing to operate the subsidiaries under the jurisdiction of the bankruptcy court.

Over a year has passed since the OTS filed the Notice of Charges and commenced the underlying administrative action, and that action has not yet concluded. The Louisiana district court's injunction suspending the Temporary C&D, however, remains in effect and is the subject of this timely appeal by the OTS.

## II.  DISCUSSION

To obtain a preliminary injunction, the plaintiffs had to show (1) that there was a substantial likelihood they would succeed on the merits, (2) that they faced a substantial threat of irreparable harm without the injunction, (3) that the threatened injury exceeded any harm that would flow from the injunction, and (4) that the injunction would not undermine the public interest. <u>United Offshore Co. v. Southern Deepwater Pipeline Co.</u>, 899 F.2d 405, 407-08 (5th 1990). Although the district court must apply a stringent standard, our review is limited generally to considering whether the district court abused its discretion. <u>Doran v. Salem Inn, Inc.</u>, 422 U.S. 922, 931-32, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975). We review findings of fact for clear error. FED. R. CIV. P. 52(a). We review *de novo* the legal questions decided by the district court. <u>United Offshore Co.</u>, 899 F.2d at 407.

The parties have argued extensively the merits of the preliminary injunction. Our review, however, does not reach the merits because the district court did not reach them. The plaintiffs had filed their complaint and an application for a temporary restraining order, which they supplemented with a memorandum of law for the preliminary injunction hearing. The OTS had filed its response to the application. At the preliminary injunction hearing, the district court had before it those documents and the findings of the bankruptcy court. The district court, however, did not consider the four inquiries required for a preliminary injunction. Instead, the district court was concerned about the concurrent bankruptcy proceeding in South Carolina, and it decided to transfer the action to South Carolina "in the interest of judicial economy." By its injunction, the district court suspended the operation of the Temporary C&D until the bankruptcy court in South Carolina could take up the matter. Although we vacated the transfer as improper, the Temporary C&D remains suspended pending our decision on this appeal.

The district court did not consider the contentions of the parties, nor did it take further evidence to determine whether a preliminary injunction was warranted. We conclude that the district court abused its discretion by failing to apply the four criteria for preliminary injunctions when it granted the suspension. The plaintiffs ask us to affirm the injunction, and the OTS argues that we should reverse and render. Neither action,

however, is appropriate. We vacate the injunction and remand the case to the district court. The district court must determine whether the plaintiffs can make a proper showing and are entitled to suspension of the Temporary C&D.

In addition to failing to apply the proper criteria, the district court did not comply with Federal Rules of Civil Procedure 52(a) and 65(d). Rule 52(a) mandates that the district court issue findings of fact and conclusions of law when it grants an injunction. Rule 65(d) requires the district court to set forth in specific terms its reasons for issuing the injunction. The district court stated generally its reasons for suspending the Temporary C&D and took notice of the findings of the bankruptcy court, but failed to issue specific findings.

The plaintiffs argue that the South Carolina bankruptcy court's findings justify the suspension of the Temporary C&D and have preclusive effect in the instant case. They assert that the OTS is barred from relitigating the findings because they are based upon issues that (1) are identical to those involved in the prior litigation, (2) have been actually litigated, and (3) have been "a critical and necessary part of the judgment in the earlier action." Terrell v. DeConna, 877 F.2d 1267, 1270 (5th Cir. 1989).

This argument fails for two reasons. First, issue preclusion does not apply. The question before the court in South Carolina

9

was whether it should enjoin the RTC from exercising shareholder rights over the subsidiaries and from denying Landmark and its officers access to books and records.  The Temporary C&D was not before the bankruptcy court and has little to do with the RTC's rights as receiver.  Additionally, of course, the Fourth Circuit reversed the bankruptcy court's injunction.  As the United States Supreme Court has noted, "[E]ven if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, *so long as the judgment in the first suit remains unmodified*."  Southern Pac. R.R. v. United States, 168 U.S. 1, 48-49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897) (see 18 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4416 (1981)).  Although the first suit was as yet unmodified when the district court suspended the Temporary C&D, it has since been reversed, and the original findings clearly can have no preclusive effect.[2]

The second reason the plaintiffs' contention fails is exemplified by Seattle-First National Bank v. Manges, 900 F.2d 795, 799-800 (5th Cir. 1990).  In that case, the district court had adopted the magistrate's findings of fact and had issued a preliminary injunction.  Although we held that the district court

_____

[2]  The OTS also argues that issue preclusion is inapplicable because there is no privity between the parties.  The plaintiffs counter that decisions rendered against one federal agency have preclusive effect against another, citing 18 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4458 (1981).  In light of our determination above, we need not consider this contention.

10

did not abuse its discretion in granting the injunction because the movant had made the proper showing, we nevertheless remanded the case to the district court so it could issue its own findings. More is required here since the district court merely took notice of the bankruptcy court's findings. We also recognize that an appellate court can review a district court record in the absence of findings and conclusions as long as (1) the record is exceptionally clear and (2) remand would serve no useful purpose. White v. Carlucci, 862 F.2d 1209, 1210-11 n.1 (5th Cir. 1989). In this case, however, we find that disputes in the record warrant remand. Under Manges, we must remand the case to the district court for issuance of its own findings of fact and conclusions of law.

Finally, an evidentiary hearing is necessary on remand only if the parties are disputing material facts. Otherwise, a hearing on the basis of briefing and affidavits is sufficient. Parker v. Ryan, 959 F.2d 579, 583 (5th Cir. 1992); FSLIC v. Dixon, 835 F.2d 554, 558 (5th Cir. 1987). The record reveals several disputes of material fact that the district court must necessarily resolve in deciding whether to issue the injunction. An evidentiary hearing thus is in order upon remand.

### III. CONCLUSION

The district court did not consider whether the plaintiffs made the requisite showing to warrant suspension of the Temporary

C&D.  The district court also did not issue its own findings of fact and conclusions of law.  We vacate the suspension of the Temporary C&D and remand to the district court for an evidentiary hearing on the plaintiffs' application for a preliminary injunction.

VACATED AND REMANDED.