**Randolph W. LENZ, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

No. CIV.A.02–2378 (RWR).

United States District Court, District of Columbia.

March 7, 2003.

Eric W. Bloom, Thomas M. Buchanan, Winston & Strawn, Washington, DC, for Plaintiff.

Thomas L. Holzman, Federal Deposit Insurance Corporation, Washington, DC, for Defendant.

## MEMORANDUM OPINION

ROBERTS, District Judge.

Plaintiff has brought this action against the Federal Deposit Insurance Corporation (the "FDIC") and moved for an injunction pursuant to 12 U.S.C. § 1818(c)(2) (2000) to set aside or limit certain portions of a temporary cease and desist order (the "Order") entered against him by the FDIC. The FDIC has petitioned to enforce the Order pursuant to 12 U.S.C. § 1818(d) and moved to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6). Because the plaintiff failed to show that he has a substantial likelihood of success on the merits of his complaint, or that he will be irreparably harmed if the injunction is not issued, the plaintiff's motion for an injunction will be denied. Because the plaintiff has failed to obey the Order, the defendant's petition to enforce the Order will be granted. Finally, because the relief plaintiff has sought unsuccessfully in his motion is identical to the relief requested in his complaint, judgment will be entered for the FDIC, and the FDIC's motion to dismiss will be denied as moot.

## BACKGROUND

Under 12 U.S.C. § 1818 (2000), if, in the FDIC's opinion, an insured depository institution or any of its directors has engaged in unsafe or unsound business practices or "has violated ... a law, rule, or regulation, or any condition imposed ... by the [FDIC] ..., the [FDIC] may ... issue and serve upon ... such party a notice of charges ... constituting the alleged violation." 12 U.S.C. § 1818(b)(1). The party is entitled to a hearing. *Id.*

The FDIC is also authorized to issue a temporary cease and desist ("asset freeze") order pending completion of the hearing if the alleged violation "is likely to cause insolvency or significant dissipation of assets ... or to weaken the condition of the ... institution or otherwise prejudice the interests of its depositors ...." 12 U.S.C. § 1818(c)(1). However, the FDIC may not issue an asset freeze order "unless the [FDIC] meets the standards of Rule 65 of the Federal Rules of Civil Procedure ... without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate." § 1818(b)(10).[1]

---

1. Rule 65, which governs applications for injunctive relief, requires that the applicant

After being "served with a temporary cease-and-desist order, the … party may apply to … the United States District Court for the District of Columbia, for an injunction setting aside, limiting, or suspending … such order pending the completion of the administrative proceedings …." 12 U.S.C. § 1818(c)(2). Likewise, the FDIC may move to enforce a challenged asset freeze order. 12 U.S.C. § 1818(d).[2]

Connecticut Bank of Commerce ("CBC") was closed on June 26, 2002 by the Connecticut banking commissioner, and the FDIC was appointed as the bank's receiver. Plaintiff Randolph Lenz was Chairman of CBC's Board of Directors. The FDIC conducted an examination and investigation of CBC and concluded that Lenz had engaged in massive insider abuse and fraud with regard to several loan transactions. According to the FDIC, the fraudulent loans unjustly enriched Lenz by $20 million and exposed the FDIC, as receiver for CBC, to losses in excess of $34 million on the unpaid loan balances.

Thereafter, in November 2002, the FDIC instituted administrative enforcement proceedings against Lenz. It served him with a notice of charges which alleged in 118 detailed paragraphs numerous specific violations of law and unsound banking practices attributable to him. As the FDIC has summarized them, the charges were that Lenz, as chairman of the board of CBC, engaged in "sham transactions featuring large sums of money loaned to 'straw' or nominee borrowers, who immediately transferred the funds to Lenz, or to entities controlled by him. Other straw loans were made … to remove delinquent loans from the books of CBC and conceal the true financial condition of the bank from the FDIC and the Connecticut Banking Department." (Opp'n to Mot. for Prelim. Inj. at 3.) The notice specified 38 such loans valued at over $60 million.[3] Each was identified separately by the name of the borrower, and the date and amount of the loan. It specified that the amount of the unpaid balances on the outstanding fraudulent loans was at least $34 million.

The FDIC also issued a temporary cease and desist order against Lenz to prevent dissipation or concealment of his assets during the proceedings. The Order requires Lenz to post as security $34 million for the unpaid loan balances; bars him from selling, transferring or encumbering personal funds or assets, except assets used to pay reasonable living expenses and attorneys fees aggregating less than $10,000 per month; and requires him to make a series of disclosures to the FDIC concerning his income, assets and liabilities. Finally, the Order permits plaintiff to petition the FDIC directly for relief if undue hardship will result from abiding by the terms of the Order.

On December 5, 2002, Lenz filed his complaint in this Court alleging that the FDIC lacked authority to issue the Order in the absence of any actual injury, and acted in an arbitrary and capricious manner in issuing the Order. He seeks an injunction that either sets aside the Order,

show immediate and irreparable injury, loss, or damage without the relief. Fed.R.Civ.P. 65(b).

**2.** Section 1818(d) states, in relevant part:
"In the case of violation … or failure to obey, a temporary cease and desist order … it shall be the duty of the court to issue [an] injunction" to enforce the order.

**3.** The notice identified over $60 million in such loans, see Complaint, Ex. A at 14, 19, 22, 26, although the findings of fact accompanying the Order estimated the amount as $40 million. Id., Ex. B, Findings of Fact and Conclusions of Law ¶ 8.

or 1) limits the amount of security requested by the FDIC, and 2) grants him monthly living expenses in an amount greater than the $10,000 per month allowed in the Order. The FDIC seeks to have the complaint dismissed and the Order enforced since plaintiff has not complied with it.

## DISCUSSION

### I. INJUNCTION

■ To obtain an injunction under § 1818(c)(2), a plaintiff must show "1) a substantial likelihood of success on the merits, 2) that [he] would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C.Cir.1995) (citation omitted); *see also Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 360 (D.C.Cir.1999); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed*, 58 F.3d at 747 (affirming a denial of an injunction against a temporary cease and desist order where the movant failed to show irreparable injury).

■ Plaintiff contends that he is likely to succeed on the merits of his claim that the FDIC was not authorized to issue the Order because the FDIC did not meet the requirements of Fed.R.Civ.P. 65. According to the plaintiff, the FDIC has not alleged or proven that either CBC or the FDIC suffered any loss as a result of plaintiff's misconduct. He states that unless the FDIC can demonstrate that the borrowers of the loans bearing the $34 million in outstanding balances actually defaulted or are failing to make payments on the outstanding debt, the FDIC has no right to freeze plaintiff's assets or to order plaintiff to post security in the amount of $34 million. However, the FDIC has presented the sworn declaration of Michael Quarry, a credit account officer who manages loans within the FDIC's division responsible for administering the affairs of failed financial institutions for which the FDIC has been appointed receiver. It clearly shows eleven of the allegedly fraudulent loans in default with principal balances in excess of $20 million. This satisfies the showing of injury, loss or damage required under Rule 65.

■ Plaintiff further argues that the FDIC's demand for $34 million in security coupled with the $10,000 monthly limit for living expenses and attorneys fees, was both arbitrary and capricious. In *Motor Vehicle Mfrs. Assoc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), the Supreme Court explained the "arbitrary and capricious" standard of review, as follows:

> [T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." In reviewing that explanation, [a court] must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."

463 U.S. at 43, 103 S.Ct. 2856 (citations omitted); *see Southern Co. Services Inc. v. FCC*, 313 F.3d 574, 579 (D.C.Cir.2002).

Here, in fixing the amount of security Lenz had to post, the FDIC relied on plaintiff's own July 15, 1999 personal financial statement setting his liquid net worth at over $59 million, a figure that did not include his assets that were illiquid or difficult to value. Lenz had used that personal financial statement to convince the FDIC that he had enough assets to

boost CBC's capital structure by $20 million, and thereby secure FDIC approval of his bid to have CBC buy a larger bank. He has not demonstrated that he could not have lived off of the $25 million that would remain in his portfolio after posting $34 million in security. Moreover, plaintiff has made no showing why the information in his 1999 financial statement should not have led the FDIC to impose a monthly limit of $10,000 for living expenses and attorney's fees. Under the Order, Lenz will be free to present more current financial data to the FDIC to persuade the FDIC to increase the $10,000 monthly limit.

There was nothing irrational or erroneous about the FDIC's choice to impose the challenged financial conditions based upon the data plaintiff supplied. Plaintiff has failed to show a likelihood of success on the merits, or that he faces irreparable injury unless an injunction is issued.

## II. ASSET FREEZE ORDER

"[J]udicial review [of a temporary cease and desist order] is adequately carried out if the agency presents a *prima facie* case of illegality, based upon the agency's demonstrated compliance with its procedures and the statutory grounds for issuing a temporary order.... [S]uch a *prima facie* case requires a verified statement of the specific facts giving rise to violations or improprieties ...." *Parker v. Ryan,* 959 F.2d 579, 583 (5th Cir.1992).

█ The Order here warrants enforcement. The FDIC followed the requirements for instituting the enforcement proceedings that led to the Order. It served on plaintiff a notice of charges that described with particularity the actions taken, the participants involved, the amounts of money lent, and the laws or sound banking practices violated. Moreover, these factual allegations were supported by detailed sworn declarations accompanying the FDIC's opposition to plaintiff's motion. In addition to Quarry, the declarants included present and former FDIC regional officials, and the commissioned FDIC bank examiner and fraud specialist who reviewed the relevant bank records. These documents amply establish the illegal behavior that harmed CBC.

The FDIC has *prima facie* demonstrated that Lenz was in part responsible for causing CBC's failure. It has acted to stanch the losses caused by Lenz's alleged misdeeds. It is undisputed that the plaintiff has failed to comply with the Order's requirements relating to posting security, and making disclosures concerning his income, assets and liabilities. Therefore, the FDIC's petition to enforce will be granted. Plaintiff's request to modify his monthly expenses limit should be directed to the FDIC under the Order's hardship provision.

## *CONCLUSION*

Because plaintiff has failed to carry his burden of proof, his motion for an injunction will be denied. Because the plaintiff has failed to obey the properly issued Order, the defendant's petition to enforce the Order will be granted. Since the sole relief sought in the complaint and available to plaintiff under § 1818(c)(2)—the statutory cause of action he alleged—is being denied, judgment will be entered for the defendant and against plaintiff. A final order accompanies this Memorandum Opinion.