# FEDERAL DEPOSIT INSURANCE CORPORATION

v.

### Randolph W. LENZ

### No. 03CV1692(JBA).

United States District Court,
D. Connecticut.

June 29, 2004.

Charles L. Cope, Daniel H. Kurtenbach, Richard B. Foley, Robert D. McGillicuddy, Tom Holzman, Washington, DC, John B. Hughes, U.S. Attorney's Office, New Haven, CT, Marguerite Sagatelian, Braintree, MA, for Plaintiff.

Anthony J. D'Auria, Anthony DiSarro, Winston & Strawn, New York, NY, Thomas J. Murphy, Cowdery, Ecker & Murphy, Hartford, CT, for Defendant.

**RULING ON DEFENDANT'S CROSS-MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [Doc. # 23]**

ARTERTON, District Judge.

Defendant Randolph W. Lenz ("Lenz") has moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint of plaintiff Federal Deposit Insurance Corporation ("FDIC"). For the reasons discussed below, defendant's motion is denied.

## I. Background

Plaintiff Randolph Lenz is the former Chairman of the Board of Directors of Connecticut Bank of Commerce ("CBC"), which was closed by the Banking Commissioner of the State of Connecticut on June 26, 2002. The FDIC, appointed as the bank's receiver, charged Lenz with a "pattern and practice of insider abuse and fraudulent activity [which] resulted in his unjust enrichment and in substantial damage to CBC," and commenced administrative enforcement proceedings. Complaint [Doc. # 1] at ¶ 9. Upon commencing the administrative proceedings in November 2002, the FDIC issued a Temporary Order to Cease and Desist against Lenz to prevent dissipation or concealment of his assets. The Temporary Cease and Desist Order provides in pertinent part:

> [Lenz] ... shall provide security ... in the amount of at least $34,000,000 ...
>
> [Lenz] shall cease and desist from, directly or indirectly, causing the sale, transfer or encumbrance of funds or other asset of any nature whatsoever in which the Respondent, or any member of his immediate family, has a legal or beneficial interest, whether directly or through any other person or entity, including, but not limited to, the transfer of assets currently outside of the United States.
>
> [Lenz] ... shall submit to the Area Director such financial statements as are necessary to show ... a complete and itemized listing of his assets and liabilities, and those of his immediate family, and which shall show the value of [his] legal and beneficial interest in each of his related interests... Such financial statements shall be prepared in accordance with generally accepted account-

ing principles by a certified public accountant . . . .

Temporary Order to Cease and Desist as to respondent Randolph W. Lenz and respondent J. Donald Weand, Jr., November 22, 2002 [Doc. # 1, Ex. B].

Pursuant to 12 U.S.C. § 1818(c)(2), Lenz moved in the United States District Court for the District of Colombia for a preliminary injunction "setting aside, limiting, or suspending the enforcement, operation, or effectiveness" of the Temporary Cease and Desist Order pending completion of the administrative proceedings. 12 U.S.C. § 1818(c)(2). On March 7, 2003, the D.C. District Court denied the motion, concluding that "[t]he Order here warrants enforcement. The FDIC followed the requirements for instituting the enforcement proceedings that led to the Order. . . . The FDIC has *prima facie* demonstrated Lenz was in part responsible for causing CBC's failure. It has acted to stanch the losses caused by Lenz's alleged misdeeds." *See Lenz v. FDIC*, 251 F.Supp.2d 121, 125 (D.D.C.2003).

The FDIC now brings this action seeking enforcement of the agency's Temporary Cease and Desist Order against Lenz. In its complaint, the FDIC alleges that Lenz has been in continuing violation of the Temporary Cease and Desist Order. *See* Complaint [Doc. # 1] at ¶ 16. For example, the FDIC alleges that Lenz failed to post any security, in violation of the Order's requirement that Lenz post security in the amount of $34 million. *See id.* at ¶ 17. The complaint also alleges that Lenz failed to inform the FDIC of his attempt to sell his interest in a $10 million yacht and in a multi-million dollar ranch in Utah known as the Buffalo Run Ranch, and that Lenz failed to inform the FDIC of his control over the assets of the Corsta Corporation, and his attempted transfer of the proceeds of the sale of the subsidiaries of the Corsta Corporation. *See id.* at ¶ 18. Further, the FDIC alleges that Lenz failed to provide financial statements in accordance with generally accepted accounting practices and failed to provide a complete listing of his assets and liabilities. *See id.* at ¶ 19. Finally, the complaint alleges that, in violation of the Temporary Cease and Desist Order, Lenz transferred $11,500 from his PNC bank account and transferred six checks, each in the amount of $17,194.44 from the deposit account at Sun Trust Bank of CBC Investment Partners, LLC, a related interest of Lenz. *See id.* at ¶ 20.

Count I of the FDIC's complaint seeks injunctive relief under 12 U.S.C. § 1818(d) enforcing the Temporary Cease and Desist Order. Count II seeks a restraining order under 12 U.S.C. § 1818(i)(4)(A)(I) aiding the enforcement of the Temporary Cease and Desist Order by prohibiting Lenz from withdrawing, transferring, removing, dissipating or disposing of any funds, assets or other property. In Count III, the FDIC seeks the appointment of a temporary receiver, pursuant to 12 U.S.C. § 1818(d) and (i)(4)(A)(ii), and Fed.R.Civ.P. 66, to ensure Lenz's compliance with the Temporary Cease and Desist Order and to administer the injunctions sought by the FDIC.

## II. Standard

When deciding a 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–

14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III. Discussion

In his motion to dismiss, Lenz challenges both the validity of the Temporary Cease and Desist Order and which assets are properly subject to the Temporary Cease and Desist Order. Lenz makes five principal arguments in his motion. First, Lenz argues that the FDIC's claimed entitlement to enforce its Temporary Cease and Desist Order against assets allegedly owned by Lenz fails because, under 12 U.S.C. § 1818(c)(1), a Temporary Cease and Desist Order can only apply to the assets of the depository institution, in this case CBC, not Lenz's personal assets. Second, Lenz claims that under the statute and implementing regulations, a Temporary Cease and Desist Order cannot, as a matter of law, apply to assets owned by Lenz's "immediate family." Third, Lenz maintains that even if the law allowed the Temporary Cease and Desist Order to be extended to the target's immediate family members, in this case the FDIC cannot freeze the assets owned by Lenz's adult children, because they are not subject to the order's definition of "immediate family." Fourth, Lenz argues that the Temporary Cease and Desist Order cannot extend to the Corsta Corporation's assets, because the FDIC does not and cannot allege that Lenz has a legal or beneficial interest in the Corsta funds. Finally, Lenz asserts that the complaint should be dismissed because the FDIC failed to seek judicial enforcement before "unilaterally and extrajudicially freezing" certain assets.

The FDIC argues that Lenz's motion to dismiss is an improper collateral attack on the underlying statutory enforcement process. In particular, the FDIC contends that the doctrine of res judicata bars Lenz's challenge to the Temporary Cease and Desist Order, because under 12 U.S.C. § 1818(c)(2), Lenz has already sought, and was denied, an order setting aside or limiting the Temporary Cease and Desist Order. The FDIC further argues that under 12 U.S.C. § 1818(i)(1), this Court lacks jurisdiction to review the Temporary Cease and Desist Order, as Lenz's only avenue for judicial review was the action under section 1818(c)(2), which Lenz brought in the D.C. District Court. The FDIC contends that Lenz's arguments also fail on their merits.

### A. Res Judicata

■ As provided for by statute, within ten days after the FDIC issued its Temporary Cease and Desist Order against Lenz, Lenz brought suit in the United States District Court for the District of Columbia, seeking an injunction "setting aside, limiting, or suspending the enforcement, operation, or effectiveness" of the order. 12 U.S.C. § 1818(c)(2). In his suit, Lenz argued that the FDIC was not authorized to issue the Temporary Cease and Desist Order because it had not alleged or proven that CBC or the FDIC suffered any loss as a result of his misconduct. Lenz also argued that the FDIC's demand for $34 million in security and its $10,000 monthly limit for his living expenses and attorneys fees was arbitrary and capricious. In a ruling issued March 7, 2003, the D.C. District Court denied Lenz's motion for an injunction. *See Lenz v. FDIC,* 251 F.Supp.2d 121 (D.D.C.2003). The district court concluded that "since the sole relief

sought in the complaint and available to plaintiff under § 1818(c)(2)—the statutory cause of action alleged—is being denied, judgment will be entered for the defendant and against plaintiff." *Id.* at 125. That district court subsequently denied, without prejudice, the FDIC's motion for a temporary receiver on grounds that venue for an enforcement action under section 1818(i) lies "within the jurisdiction of which the home office of the depository institution is located."[1] As a result, the FDIC commenced this action.

 It is well established that "[t]he rule [of res judicata] provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim and demand, but as to any other admissible matter which might have been offered for that purpose.' The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (citation omitted). Under the traditional rule,

> a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand. It operates to bind the parties both as to issues actually litigated and determined in the first suit, and as to those grounds or issues which might have been, but

were not, actually raised and decided in that action. The first judgment, when final and on the merits, thus puts an end to the whole cause of action.

*Epperson v. Entertainment Express, Inc.,* 242 F.3d 100, 108–09 (2d Cir.2001) (quoting *Saylor v. Lindsley,* 391 F.2d 965, 968 (2d Cir.1968)) (original citations omitted).

Lenz offers three grounds in support of his argument that res judicata should not apply. First, Lenz argues that the D.C. district court's preliminary injunction ruling is not a final determination subject to claim preclusion. This argument is puzzling, as the district court noted that its preliminary injunction ruling denied the only relief sought in the complaint and available to Lenz under § 1818(c)(2). The district court thus expressly concluded, "judgment will be entered for the defendant and against plaintiff. A final order accompanies this memorandum opinion." *Lenz,* 251 F.Supp.2d at 125. The district court's final order, moreover, clearly provides that "[t]his is a final, appealable order." *See Lenz v. FDIC,* Order and Final Judgment, Mar. 7, 2003 [No. 02cv2378 (RWR), Doc. # 22]. Lenz appealed the district court's ruling to the Court of Appeals for the District of Columbia, and voluntarily dismissed the appeal on December 5, 2003. *See Lenz v. FDIC,* No. 03–5233, docketed Aug. 27, 2003. The D.C. district court's ruling is clearly final.

Lenz also argues that the D.C. district court lacked jurisdiction to issue its order, because, as it later determined in dismissing the FDIC's motion to enforce the Temporary Cease and Desist Order pursuant to 12 U.S.C. § 1818(i)(1), that provision requires any such enforcement action be

---

**1.** The venue provisions in sections 1818(i) and 1818(d) are unlike the venue provision in section 1818(c), which states that the depository institution or instituted-affiliated party "may apply to the United States district court

for the judicial district in which the home office of the depository institution is located, or the United States District Court for the District of Columbia." 12 U.S.C. § 1818(c)(2).

brought in the district "where the failed CBC Bank is located." *See* Aug. 4, 2003, Memorandum Opinion and Order [No. 02cv22378 (RWR), Doc. # 46] at 3–4. This argument too is wholly without merit, as the D.C. district court expressly found that "[v]enue in this district was proper for the plaintiff's original motion to enjoin the enforcement of the cease and desist order, 12 U.S.C. § 1818(c)(2), but defendant must pursue its enforcement efforts in the United States District Court for the District of Connecticut, where the failed CBC Bank is located." *Id.* at 4. Section 1818(c)(2) provides that the depository institution or institution-affiliated party may apply for an injunction to the "United States District Court for the District of Columbia."

Finally, Lenz contends that the present cause of action is not the same as his earlier claim before the D.C. court, because new facts have arisen that could not have been raised earlier. In particular, Lenz notes that under the statute, Lenz was required to move for a preliminary injunction within 10 days. At the end of this 10 day period, Lenz contends that the FDIC had not yet taken its current positions that the Temporary Cease and Desist Order applies to the accounts of the Corsta Corporation, the listing of a boat for sale, the entire Buffalo Run ranch in Utah, and the sale of Florida property by CLSD Properties L.C. Therefore, his specific challenges to the Temporary Cease and Desist Order are distinct from what was before the D.C. district court, and could not have been raised earlier.

Although "[d]efinitions of what constitutes the 'same cause of action' have not remained static over time," *Nevada v. United States,* 463 U.S. 110, 129–30 & n. 12, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983), the dominant federal rule is based on a transactional approach to defining the claim. As the Second Circuit has framed the test, "[w]hether or not the first judgment will have preclusive effect depends in part on whether same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *NLRB v. United Technologies,* 706 F.2d 1254, 1260 (2d Cir.1983). Thus, in *Woods v. Dunlop Tire Corporation,* 972 F.2d 36 (2d Cir.1992), the Second Circuit found that plaintiffs Title VII suit was barred by res judicata, because it was based on the same facts as plaintiff's earlier suit under the Labor Management Relations Act, and therefore was not a "separate and distinct cause of action." *Id.* at 38. The Court concluded that "[i]t is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which Woods chose to frame her complaint."

Lenz's argument thus fails to the extent his claims here are mere facial challenges to the validity of the Temporary Cease and Desist Order. The Temporary Cease and Desist Order itself existed at the time of the D.C. district court litigation, and has not been modified in any way. In the prior litigation, Lenz was able to challenge the validity of the Order, and to seek to modify, suspend, terminate, or set it aside. That he failed to make the arguments he now raises is irrelevant, as he was fully able to do so before the D.C. court under 12 U.S.C. § 1818(c)(2).

It is necessary, however, to distinguish the validity of the Temporary Cease and Desist Order itself from the issue of which assets are properly subject to the Temporary Cease and Desist Order. Lenz notes that later transactions occurred after the dismissal of his claim before the D.C. district court, in which the FDIC sought to prevent the transfer or sale of particular assets, and that he could not have raised

his challenges to the assets involved earlier. His assertion is only accurate to the extent that the factual grounds could not have been previously raised. Where he challenges only the terms of the Temporary Cease and Desist Order, and such terms could have been challenged in the D.C. district court, he is barred by res judicata, and the existence of post-dismissal transactions cannot revive those issues for disposition here.

For example, Lenz's argues in his motion that 12 U.S.C. § 1818(c)(1) requires that a Temporary Cease and Desist Order apply only to the assets of the depository institution itself, and that the Temporary Cease and Desist Order is therefore invalid because it applies to all of Lenz's assets, not only those of the CBC. *See* Temporary Cease and Desist Order [Doc. # 1, Ex. B] at Art. 1, ¶ (2)(a) ("[Lenz] shall cease and desist from, directly or indirectly, causing the sale, transfer or encumbrance of funds or other asset of any nature whatsoever in which the respondent, or any member of his immediate family, has a legal or beneficial interest ...."). This statutory claim that non-depository assets cannot lawfully be subject to a Temporary Cease and Desist Order is barred by res judicata because it seeks to set aside or limit the terms of the order, which he was entitled to do before the D.C. district court under 12 U.S.C. § 1818(c)(2), and requires no new factual information. Lenz also argues

that the Temporary Cease and Desist Order cannot, as a matter of law, apply to assets owned by his "immediate family." *Id.* This too is a challenge to the validity of the Temporary Cease and Desist Order, because, as Lenz acknowledges, the Order itself states that it extends to the assets of "his immediate family." Lenz's challenge is based only on his interpretation of the relevant statutory and regulatory provisions, not new transactions or facts. As this claim could have been raised before the D.C. district court, it is similarly barred by res judicata.

Further, Lenz argues that the Temporary Cease and Desist Order is not self-enforcing, and that the enforcement mechanisms of 12 U.S.C. § 1818(d) (application to U.S. district court for injunction), and 1818(i)(4)(A) (application to court for restraining order and appointment of temporary receiver), must be exercised prior to the deprivation of property. Lenz's deprivation, however, was the Temporary Cease and Desist Order itself. By statute, the Temporary Cease and Desist Order is self-executing, effective upon service.[2] *See* 12 U.S.C. § 1818(c)(1) ("Such order shall become effective upon service upon the depository institution or such institution-affiliated party and, unless set aside, limited, or suspended by a court in proceedings authorized by paragraph (2) of this subsection, shall remain effective and enforceable pending the completion of the administra-

---

**2.** The Court notes that on its merits, Lenz's statutory argument fails. What Lenz deems "pre-deprivation enforcement mechanisms" in 12 U.S.C. § 1818(d) and 12 U.S.C. § 1818(i)(4)(A), are in fact mechanisms under which the FDIC, in its discretion, may obtain judicial enforcement. *See* 12 U.S.C. § 1818(d) ("[T]he appropriate Federal banking agency *may* apply to the United States district court) (emphasis added); 12 U.S.C, § 1818(i)(1) ("the appropriate Federal banking agency *may in its discretion* apply to the United States district court ...") (emphasis

added); *see also Abercrombie v. Clarke,* 920 F.2d 1351 (7th Cir.1990) (noting that the Senate Report on a bill that contained the provisions of 12 U.S.C. § 1818(i) noted that the "civil money penalties" of Section 1818(i) "were to serve as a 'deterrent', and were to help make cease and desist orders 'self-enforcing.' ") *Id.* at 1358, 1359 (quoting S.Rep. No. 323, 95th Cong., 1st Sess. 8–9 (1977)). Under the statute, Lenz was required to comply with the Temporary Cease and Desist Order upon service.

tive proceedings ..."). Under this statute, Lenz was entitled to challenge the validity of the Temporary Cease and Desist Order in a post-deprivation hearing brought under 1818(c)(2). At such hearing, Lenz could have argued that the Temporary Cease and Desist Order violated his due process rights because he did not have a hearing prior to its imposition. Because Lenz could have raised this argument previously, this claim too is barred by res judicata.

### B. Merits

■ Lenz's remaining arguments challenge not the validity of the Temporary Cease and Desist Order itself, but rather the FDIC's later efforts to freeze particular assets that Lenz claims do not belong to him, such as the assets of the Corsta Corporation. As these arguments are based on new facts, they may now be addressed on their merits.

Lenz first argues that the FDIC "circumvent[ed] th[e] statutory process by pressuring *third parties* into informally freezing assets of *other third parties*, without notice or hearing." *See* Memorandum of Law in Support of Cross–Motion to Dismiss by defendant Randolph Lenz [Doc. # 24] at 23. This argument conflates the two distinct questions before this Court—whether the Temporary Cease and Desist Order itself is valid (which, as discussed above, has been settled by the D.C. district court) and which assets are properly subject to the order (which will be the subject of an evidentiary hearing). If the assets of the Corsta Corporation do belong to Lenz, then Lenz was injured at the time the Temporary Cease and Desist Order went into effect, and could have raised his challenge before the D.C. district court.[3]

Lenz also contends that under the Temporary Cease and Desist Order itself, the FDIC improperly froze the assets of the Corsta Corporation, because the Corsta Corporation assets belong to his adult children and his mother, who are not subject to the Order's definition of "immediate family." *See* Temporary Cease and Desist Order [Doc. # 1, Ex. B] at 4–5, 9 (extending order to Lenz's "immediate family" defined under 12 C.F.R. § 215.2(g), as "the spouse of an individual, the individual's minor children, and any of the individual's children (including adults) residing in the individual's home."). Further, Lenz argues that the FDIC does not, and cannot, allege that he has a "legal or beneficial interest, whether directly or through any other person or entity," in the assets of the Corsta Corporation, as it must under the terms of the Temporary Cease and Desist Order. The FDIC's complaint, however, expressly alleges that "Lenz continues to maintain an interest in, and exert control over the affairs of the Corsta Corporation and Corsta related companies." Complaint [Doc. # 1] at ¶ 18. The FDIC does not allege that Lenz's mother and adult children are subject to the Asset Freeze Order as family members, but rather that Lenz himself continues to retain a legal and beneficial interest in the Corsta-related assets nominally owed by his family members. The complaint gives Lenz sufficient notice of the allegations against him,

---

**3.** The Court notes, moreover, that the FDIC in fact applied for a Temporary Restraining Order in regard to the Corsta funds, and the D.C. district court entered a Consent Order on May 14, 2003 ordering Lenz to refrain from "directly or indirectly, caus[ing] the sale, transfer or encumbrance of funds or other assets of any nature from the Corsta Corporation, a Delaware corporation, including funds of that company in accounts at Merrill, Lynch, Pierce, Fenner & Smith ('Merrill, Lynch')." *See* Consent Order, Civ. No. 02cv2378 (RWR) [Doc. # 32].

and fully satisfies the pleading requirements of Fed.R.Civ.P. 8.

Lenz strongly disputes the allegation that he has a legal or beneficial interest in the Corsta assets, and in support of his claim, states that he does not own any Corsta stock, and that in 1999 he transferred his interest in the Corsta Corporation to the Frieda Trust, whose named beneficiaries are Stacie Daley and Corbett Lenz, his adult children.[4] For the purposes of a motion to dismiss, however, the FDIC's allegations that Lenz maintains a legal or beneficial interest in the Corsta assets must be accepted as true. Only where there is no set of facts which would entitle the FDIC to relief can a complaint be dismissed. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). That there is a factual dispute about Lenz's interest in particular assets is reason for this case to proceed, not grounds for dismissal.

## IV. Conclusion

For the foregoing reasons, Lenz Cross–Motion to Dismiss for Failure to State a Claim [Doc. # 23] is hereby DENIED.

IT IS SO ORDERED.

---

**4.** Lenz argues that it is appropriate to decide this issue on a motion to dismiss because the FDIC does not dispute that Stacie Daley and Corbett Lenz are the only named beneficiaries of the Frieda Trust. The FDIC alleges, however, that Lenz retains an interest in the Corsta Corporation assets, and if this allegation is proven, the FDIC is entitled to the relief it seeks with regard to these assets. The relevant question under a 12(b)(6) motion is not whether Lenz in fact has or does not have a legal or beneficial interest in the Corsta assets, but whether the FDIC is entitled to relief under 12 U.S.C. §§ 1818(d) and (i) if it proves the facts it is alleging.